RECORD NO. 22-7054

*In The*

# United States Court of Appeals
## For The Fourth Circuit

## UNITED STATES OF AMERICA,

*Plaintiff – Appellee*,

**v.**

## ZACKARY ELLIS SANDERS,

*Defendant – Appellant.*

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA AT ALEXANDRIA

────────────

### BRIEF OF APPELLANT

────────────

**Nina J. Ginsberg**
**DIMUROGINSBERG, PC**
**1101 King Street, Suite 610**
**Alexandria, Virginia 22314**
**(703) 684-4333**

*Counsel for Appellant*

**<u>TABLE OF CONTENTS</u>**

<u>Page</u>

TABLE OF AUTHORITIES ....................................................................iv

JURISDICTIONAL STATEMENT ........................................................1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ............................1

STATEMENT OF THE CASE ...............................................................2

SUMMARY OF THE ARGUMENT ......................................................9

STANDARD OF REVIEW ................................................................10

ARGUMENT ....................................................................................11

     I.     Electronic storage devices are not "other matter" forfeitable under 18 U.S.C. § 2253(a)(1) ....................................................11

          A.     In determining the meaning of statutory terms, courts turn to basic principles of statutory construction requiring that terms be given their plain meaning by reference to the context in which those terms are used ......................................12

          B.     The text of § 2253(a)(1) must be read to include only "other matters" from which child pornography cannot be removed or separated out without materially altering or destroying the matter ................................................................13

          C.     The structure of § 2253(a) as a whole supports a narrower interpretation of "other matter." ...............................................15

          D.     Every court that has construed the phrase "any book, magazine, periodical, film, videotape, or other matter," or a related provision in a prior version of the Sentencing Guidelines has concluded that files, not electronic storage devices are "other matter," with one exception. That case has been called into question ...................................................17

i

E.      The Rule of Lenity requires that this Court interpret the reach of § 2253(a)(1) in the manner that is most favorable to Sanders ................................................................................21

II.     Sanders's non-contraband electronic files are separate "property" from the tangible devices in which they are stored and are not subject to forfeiture pursuant to 18 U.S.C. § 2253(a)(3) ........22

A.      Non-contraband electronic files are separate items of property from the physical medium on which they are stored ........................................................................................23

1.      The physical storage devices and the files within those devices are not a single piece of property .............24

2.      Treating non-contraband computer files on a storage device as separate property that the government is required to return is in keeping with what numerous other courts have previously held ........25

B.      The district court's reliance on *Noyes* and *Wernick* was misplaced ..................................................................29

III.    Forfeiture of Files Containing Sanders's Only Record of His Personal, Academic and Professional Life, Unrelated To An Offense Of Conviction, Would Violate The Eighth Amendment's Requirement Of Proportionality In Sentencing ..........31

A.      The forfeiture order was grossly disproportional relative to the gravity of a defendant's offense ..........................................32

B.      The wholesale forfeiture of Sanders's personal, non-contraband files is grossly disproportional ...............................36

C.      The forfeiture of Sanders's non-contraband files does not prevent the further spread of child exploitation material and is not in keeping with the purpose of criminal forfeiture ..................................................................38

D.    The forfeiture order was plainly excessive under the Eighth Amendment ....................................................40

    1.    The district court's error in ordering the forfeiture of Sanders's non-contraband files was plain ..................41

    2.    The district court's error affected Sanders's substantial rights ............................................................44

    3.    The failure to correct the district court's error would seriously affect the fairness, integrity or public reputation of judicial proceedings or result in a miscarriage of justice ........................................................45

E.    Any inconvenience to the government is not relevant.............46

CONCLUSION ....................................................................................................49

STATEMENT REGARDING ORAL ARGUMENT ............................................49

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

<u>**TABLE OF AUTHORITIES**</u>

<u>**Page(s)**</u>

<u>**CASES**</u>

*Alexander v. United States*,
    509 U.S. 544 (1993)................................................................................32, 42

*Austin v. United States*,
    509 U.S. 602 (1993)...........................................................................32, 41, 42

*Henderson v. United States*,
    568 U.S. 266 (2013)....................................................................................41

*Ignacio v. United States*,
    674 F.3d 252 (4th Cir. 2012) .................................................................10, 12

*In re Grand Jury Subpoena Duces Tecum*,
    846 F. Supp. 11 (S.D.N.Y. 1994) ...............................................................26

*In re Search Warrant Issued June 13, 2019*,
    942 F.3d 159, (4th Cir. 2019),
    as amended (Oct. 31, 2019) ....................................................................27, 28

*Lee v. Norfolk S. Ry. Co.*,
    802 F.3d 626 (4th Cir. 2015) .......................................................................12

*Molina-Martinez v. United States*,
    578 U.S. 189 (2016).....................................................................................44

*Natl. Ass'n of Mfrs. v. Dep't. of Def.*,
    ___ U.S. ___, 138 S. Ct. 617 (2018) .....................................................10, 12

*Reno v. Koray*,
    515 U.S. 50 (1995).......................................................................................22

*Riley v. California*,
    573 U.S. 373 (2014)................................................................34, 35, 36, 46

*Robinson v. Shell Oil Co.*,
  519 U.S. 337 (1997)......................................................................12

*Taylor v. Grubbs*,
  930 F.3d 611 (4th Cir. 2019) .............................................10, 12

*Torres v. Lynch*,
  —— U.S. ——, 136 S. Ct. 1619 (2016) ........................................15

*United States v. Abdelshafi*,
  592 F.3d 602 (4th Cir. 2010) .......................................................12

*United States v. Bajakajian*,
  524 U.S. 321 (1998)..............................................................*passim*

*United States v. Bennett*,
  986 F.3d 389 (4th Cir. 2021), *cert. denied*,
  142 S. Ct. 595 (2021)....................................................................33

*United States v. Blackman*,
  746 F.3d 137 (4th Cir. 2017) .................................................45, 47

*United States v. Brack*,
  651 F.3d 388 (4th Cir. 2011) .......................................................41

*United States v. Comprehensive Drug Testing, Inc.*,
  621 F.3d 1162 (9th Cir. 2010) .....................................................28

*United States v. David*,
  756 F. Supp. 1385 (D. Nev. 1991)...............................................26

*United States v. Debbi*,
  244 F. Supp. 2d 235 (S.D.N.Y. 2003) .........................................28

*United States v. Demerritt*,
  196 F.3d 138 (2d Cir. 1999) ........................................................21

*United States v. Dominguez Benitez*,
  542 U.S. 74 (2004).........................................................................44

*United States v. Fellows*,
    157 F.3d 1197 (9th Cir. 1998) ....................................................18, 19, 20, 21

*United States v. George*,
    946 F.3d 643 (4th Cir. 2020) ...........................................................12, 13, 22

*United States v. Gladding*,
    775 F.3d 1149 (9th Cir. 2014) ........................................................46, 48, 49

*United States v. Hall*,
    142 F.3d 988 (7th Cir. 1998) ..................................................................18, 19

*United States v. Harper*,
    218 F.3d 1285 (11th Cir. 2000) ....................................................................21

*United States v. Hastings*,
    134 F.3d 235 (4th Cir.1998) ........................................................................44

*United States v. Hilton*,
    701 F.3d 959 (4th Cir. 2012) .................................................................21, 22

*United States v. Hoover–Hankerson*,
    511 F.3d 164 (D.C. Cir. 2007)......................................................................40

*United States v. Ide*,
    624 F.3d 666 (4th Cir. 2010) .......................................................................10

*United States v. Jalaram, Inc.*,
    599 F.3d 347 (4th Cir. 2010) ...............................................................*passim*

*United States v. Johnson*,
    915 F.3d 223 (4th Cir. 2019) .......................................................................15

*United States v. Knight*,
    606 F.3d 171 (4th Cir. 2010) .......................................................................40

*United States v. Lacy*,
    119 F.3d 742 (9th Cir. 1997) .......................................................................19

vi

*United States v. Marcus*,
    560 U.S. 258 (2010)....................................................44

*United States v. Martin*,
    662 F.3d 301 (4th Cir. 2011) .................................10, 38

*United States v. Metter*,
    860 F. Supp. 2d 205 (E.D.N.Y. 2012) ..........................28

*United States v. Mora*,
    353 F. App'x 792 (4th Cir. 2009) ................................10

*United States v. Morgan*,
    224 F.3d 339 (4th Cir. 2000) ......................................10

*United States v. Newman*,
    659 F.3d 1235 (9th Cir. 2011) .....................................39

*United States v. Noyes*,
    557 F. App'x 125 (3d Cir. 2014) .........................5, 6, 29

*United States v. Olano*,
    507 U.S. 725 (1993)................................10, 40, 44, 45

*United States v. One 1998 Tractor*,
    288 F. Supp. 2d 710 (W.D. Va. 2003), aff'd sub nom.,
    *United States v. Shimshiryan*,
    117 F. App'x 863 (4th Cir. 2004)................................24

*United States v. Santoro*,
    866 F.2d 1538 (4th Cir. 1989) ....................................24

*United States v. Sheek*,
    990 F.2d 150 (4th Cir. 1993) ......................................22

*United States v. Smith*,
    966 F.2d 1045 (6th Cir. 1992) ....................................24

*United States v. Simmons*,
    999 F.3d 199 (4th Cir. 2021) ......................................45

*United States v. Thompson*,
  281 F.3d 1088 (10th Cir. 2002) ....................................................21

*United States v. Trulock*,
  275 F.3d 391 (4th Cir. 2001) .........................................................25

*United States v. Venturella*,
  585 F.3d 1013 (7th Cir. 2009) .......................................................39

*United States v. Vig*,
  167 F.3d 443 (8th Cir. 1999) ...........................................17, 18, 19

*United States v. Wernick*,
  673 F. App'x 21 (2d Cir. 2016) ........................................5, 6, 29, 30

*United States v. Williams*,
  592 F.3d 511 (4th Cir. 2010) ..................................................26, 27

*United States v. Wright*,
  49 F.4th 1221 (9th Cir. 2022) .......................................................31

*United States v. Young*,
  470 U.S. 1 (1985).........................................................................45

*United States v Yu Qin*,
  688 F.3d 257 (6th Cir. 2012) ........................................................25

*Washington State Dept. of Social and Health Servs. v.*
*Guardianship Estate of Keffeler*,
  537 U.S. 371 (2003).....................................................................16

*Wiebe v. Nat'l Sec. Agency*,
  2012 WL 4069746 (D. Md. Sept. 14, 2012)..................................46

*Yates v. United States*,
  574 U.S. 528 (2015)...............................................................*passim*

## CONSTITUTIONAL PROVISIONS

U.S. CONST. amend. IV ...................................................................*passim*

U.S. CONST. amend. VIII .................................................................*passim*

## STATUTES

18 U.S.C. § 1519 ................................................................................14, 15

18 U.S.C. § 2251 .....................................................................................39

18 U.S.C. § 2251A ..................................................................................39

18 U.S.C. § 2252 .....................................................................................39

18 U.S.C. § 2252(a)(4) ...........................................................................17

18 U.S.C. § 2252(a)(4)(B) ............................................................17, 18, 19

18 U.S.C. § 2253 ..........................................................................6, 13, 38, 39

18 U.S.C. § 2253(a) ............................................................................*passim*

18 U.S.C. § 2253(a)(1) .......................................................................*passim*

18 U.S.C. § 2253(a)(2) ...........................................................................15

18 U.S.C. § 2253(a)(3) .......................................................................*passim*

18 U.S.C. § 2253(b) ................................................................................23

18 U.S.C. § 2254 ................................................................................38, 39

18 U.S.C. § 2253 .....................................................................................45

18 U.S.C. § 2259A ..................................................................................34

18 U.S.C. § 2259A(a)(1) .........................................................................37

18 U.S. C. § 2259A(a)(3)...........................................................37

18 U.S.C. § 3013....................................................................34

18 U.S.C. § 3014.................................................................5, 34

18 U.S.C. § 3231......................................................................1

18 U.S.C. § 3571....................................................................34

21 U.S.C. § 853..................................................................23, 29

21 U.S.C. § 853(b).................................................................23

28 U.S.C. § 1291......................................................................1

**RULES**

Fed. R. Crim. P. 32.2................................................................4

Fed. R. Crim. P. 41..................................................................6

Fed. R. Crim. P. 41(g)........................................................*passim*

Fed. R. Crim. P. 52(b)..........................................................10, 41

**GUIDELINES**

U.S.S.G. § 2G2.4....................................................................17

U.S.S.G. § 2G2.4(b)(2)....................................................18, 19, 20, 21

**OTHER AUTHORITIES**

144 Cong. Rec. S12257-01, S12259, 1998 WL 701518. .........................39

H.R. 3494, The Protection of Children
From Sexual Predators Act of 1998................................................38, 39

Matter; BLACK'S LAW DICTIONARY (11th ed. 2019) ...............................13

Matter, Merriam-Webster.com,
https://www.merriam-webster.com/dictionary/matter
(last visited Dec. 15, 2022) .........................................................................13

Pub. L. 104-208, 110 Stat. 3009-30 (Sept. 30, 1996) .............................................17

## JURISDICTIONAL STATEMENT

The district court had jurisdiction under 18 U.S.C. § 3231. This Court's jurisdiction rests on 28 U.S.C. § 1291. The Criminal Judgment on Sanders's conviction was entered April 1, 2022. JA58. The order granting the government's motion for a preliminary order of forfeiture and denying Sanders's Rule 41(g) motion for the return of seized property was entered on August 19, 2022. JA62. Sanders timely filed the instant appeal on September 1, 2022. JA62, JA236.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1.    Whether the district court erred in forfeiting Sanders's electronic storage devices "in their entirety," including the legally possessed, non-contraband files stored within those devices, pursuant to 18 U.S.C. § 2253(a)(1) which requires the forfeiture of any visual depiction, book, magazine, periodical, film, video tape or "other matter" which contains child pornography, and 18 U.S.C. § 2253(a)(3) as "property" used or intended to be used to commit or promote the commission of a child pornography offense?

2.    Whether the district court erred in denying Sanders's post-trial, Rule 41(g) motion for the return of legally possessed, non-contraband electronic files that are stored within electronic storage devices that also separately contain visual depictions of child pornography, the seizure of which exceeded the scope of the warrant?

1

3.     Whether the district court's preliminary order of forfeiture, forfeiting Sanders's electronic storage devices "in their entirety" including legally possessed, non-contraband files stored within those devices, violated the Eighth Amendment requirement of proportionality in sentencing?

## STATEMENT OF THE CASE

In August 2019, the Federal Bureau of Investigation ("FBI") received a tip that an individual using a specific IP address had allegedly accessed a website that contained child pornographic materials during a one-second time frame in May 2019.  JA81.[1]  Upon further investigation, the FBI learned that the IP address, registered to a McLean, Virginia address, belonged to Sanders's mother—a home in which both Sanders and his parents resided.  JA81.

Based on the tip, the FBI obtained a search warrant and conducted a search of Sanders's residence on February 12, 2020.  JA81.  During the search, the FBI seized several iPads, iPhones, computers, and hard drives, including all of the devices listed in the government's motion for a preliminary forfeiture order.  JA80.  A digital forensic examination of the seized devices revealed images and videos depicting

---

[1] The basis of this tip, among other issues, is the subject of Sanders's pending appeal in this Court in *United States v. Sanders*, No. 22-4242.

alleged child pornography along with graphic communications with a number of teens. JA82.[2]

On June 24, 2020, the grand jury returned a twelve-count Indictment charging Sanders with various child pornography offenses.[3] JA64. On October 27, 2021, Sanders was convicted of all twelve counts following a seven-day jury trial. JA49, 222. Sentencing was ultimately continued until April 1, 2022 for reasons unrelated to this appeal.

On March 28, 2022, Sanders filed a motion seeking the return of non-contraband property pursuant to Fed. R. Crim. Pro. 41(g) and preemptively objecting to the entry of a preliminary order of forfeiture. JA70. Specifically, Sanders sought the return of his legally possessed, non-contraband, personal, professional and educational materials stored in the devices. JA71. Sanders offered to pay the costs of the data review and segregation process by having his privately retained forensic expert examine the electronic storage devices at a government facility, copy the non-contraband files onto an external hard drive, and submit them for FBI review — a

---

[2] For purposes of this appeal, Sanders concedes that eight of the physical devices listed in the government's motion for preliminary order of forfeiture are properly forfeitable in the event that his conviction is not overturned. JA82. The ninth device, G.Ex. 1B24, was not introduced at trial and the government did not prove that it contained contraband material. JA185-187.

[3] The Indictment charged Sanders with five counts of production of child pornography (Counts 1-5); six counts of receipt of child pornography (Counts 6-11); and one count of possession of child pornography (Count 12). JA64.

procedure previously adopted by the parties during discovery—thereby eliminating the burden and cost to the government of segregating and copying the requested files. JA71.

In support of his motion, Sanders argued that the government could not retain or forfeit property unrelated to criminal activity and must return property seized as evidence under Fed. R. Crim. Pro. 41(g) once the criminal proceeding had concluded unless it was contraband or otherwise subject to forfeiture. Sanders further argued that the requested files were in no way traceable to, or otherwise contributed to the counts of conviction and were not forfeitable because they lacked the requisite nexus to the offenses required by Fed. R. Crim. P. 32.2 and 18 U.S.C. § 2253(a). JA72. Sanders also argued that because the non-contraband files constituted separate property from the forfeitable storage devices in which they were stored, the non-contraband files must be returned. JA73-77.

The next day, the government filed a Motion for Entry of a Preliminary Order of Forfeiture seeking to forfeit nine electronic devices and its Response in Opposition to Defendant's Motion for Return of Property. JA80. The government argued that the nine electronic devices were forfeitable "in their entirety" for two reasons. First, the digital devices, including their contents, were all subject to forfeiture under 18 U.S.C. § 2253(a)(1) as "*matter* which contains a visual depiction" of illicit child pornography. JA86 (emphasis added). Second, the

government argued that the nine devices and their contents were subject to forfeiture under 18 U.S.C. § 2253(a)(3) as "property" that Sanders "used to commit the child pornography violations[.]" JA86.

On April 1, 2022, the district court sentenced Sanders to a total of 216 months' imprisonment followed by lifetime terms of supervised release. JA58. The court also ordered Sanders to pay restitution of $6,000 and imposed a $60,000 special assessment pursuant to 18 U.S.C. § 3014 based on his future earnings ability. JA58. At the sentencing hearing, the court postponed ruling on the forfeiture of the nine devices and instructed the parties to file supplemental briefs addressing the issue. JA58.

In his supplemental brief, Sanders reiterated his argument that the non-contraband computer files were separate property from the devices used to commit the crime and that there was no legal basis upon which to retain or forfeit the non-contraband files located within the devices. JA114. Sanders also distinguished two cases cited by the government, *United States v. Noyes*, 557 Fed. Appx. 125 (3d Cir. 2014), a two-page unpublished opinion upholding the denial of the defendant's Rule 41(g) motion for the return of data on his seized electronic storage devices that had already been forfeited, largely on procedural grounds, and *United States v. Wernick*, 673 Fed. Appx. 21 (2d Cir. 2016) (unpublished), where the Second Circuit expressly held that it need not decide whether defendants in some cases may retain interests in

data unconnected to criminal activity that is stored on a hard drive that was "used ...

to commit or to promote the commission of [a child pornography] offense." *Id*. at

25-26.  JA116-118.

In turn, the government argued that both *Noyes* and *Wernick*, supported the

proposition that when dealing with digital storage devices, "the whole device must

be forfeited under 18 U.S.C. § 2253." JA128.  The government also argued that the

separation of the requested non-contraband data from Sanders's electronic devices

would impose an "undue and unreasonable burden on limited government

resources[.]" JA130.

On April 29, 2022, a hearing was held on the parties' respective motions.

JA177.   During the hearing, Sanders reiterated his arguments that the non-

contraband files stored within the digital devices were separate property, not

forfeitable under 18 U.S.C. § 2253(a), and that all of the non-contraband files on the

nine devices were returnable under Fed. R. Crim. P. 41(g).  JA187-196; JA199-201.

The district court summarily dismissed Sanders's Rule 41 argument stressing that

"[i]f there's forfeiture, Rule 41 has no traction." JA200.

On August 19, 2022, the district court issued its order and accompanying

memorandum opinion denying Sanders's motion for the return of his non-

contraband files and granting the government's motion for a preliminary order of

forfeiture.  JA221, JA235.  In denying Sanders's motion, the district court ruled that

forfeiture of the nine devices, including all of their contents, was mandated by "the plain text of § 2253(a)[.]" JA231.  More specifically, the court held that Sanders's electronic devices were subject to forfeiture "in their entirety" under § 2253(a)(l) because they are "any ... *other matter* which contains any such visual depiction of child pornography."  JA227 (emphasis added).  By "in their entirety," the district court and the government meant the physical components of the devices, as well as all files stored in the devices.

The court further interpreted the term "other matter" in § 2253(a)(l) as applying to the physical devices themselves and not to the individual files stored within the devices, stating that "§ 2253(a)(l) clearly requires forfeiture of the matter containing the visual depictions—i.e., the electronic storage devices." JA227.  The court further stated that:

> "nowhere does the statute provide that only some portion of the property containing child pornography should be subject to forfeiture. Nor does the statute provide that non-contraband material on the devices should be separated from contraband materials on the devices and returned to a defendant. Instead, the statute clearly requires forfeiture of 'any ... matter which contains' a visual depiction of child pornography, and thus requires the forfeiture not only of the visual depiction itself, but also the matter or device on which that visual depiction is stored. 18 U.S.C. § 2253(a)(l). Accordingly, any and all property used to commit a child pornography offense must be forfeited to the government under § 2253(a)(3)."

JA226.

The court separately held that the nine electronic storage devices were also forfeitable "in their entirety" under § 2253(a)(3) as "any property, real or personal, used or intended to be used to commit or to promote the commission of such offense." JA227. As with § 2253(a)(1), the court interpreted the term "property" in § 2253(a)(3) as referring to the storage devices and their contents. JA227.

Lastly, based on a declaration by an FBI forensic examiner that Sanders had largely discredited, the district court concluded that the government had proven that compliance with Sanders's request would impose a substantial and unwarranted burden on government resources. JA232; JA141-142. The court further opined that "any burden to the Defendant in this case [was] a result of the Defendant's own wrongdoing," and that he was the one "who decided to commingle family photographs and business records with images of child pornography." JA233. Consequently, the court held that "equity required denial of Defendant's motion." JA233.

Sanders timely filed his notice of appeal to the denial of his Rule 41(g) motion and the entry of the preliminary order of forfeiture on September 1, 2022. JA236.

# SUMMARY OF THE ARGUMENT

1.    The preliminary order of forfeiture should be vacated because Sanders's legally possessed, non-contraband electronic files that are stored within electronic storage devices that also separately contain visual depictions of child pornography are not forfeitable pursuant to 18 U.S.C. § 2253(a)(1) which requires the forfeiture of any visual depiction, book, magazine, periodical, film, video tape or "other matter" that contains child pornography.

2.    The preliminary order of forfeiture should be vacated because Sanders's legally possessed, non-contraband electronic files that are stored within electronic storage devices that also separately contain visual depictions of child pornography are not forfeitable pursuant to 18 U.S.C. § 2253(a)(3) as "property" used or intended to be used to commit or promote the commission of a child pornography offense.

3.    The district court erred in denying Sanders's post-trial, Rule 41(g) motion for the return of legally possessed, non-contraband electronic files that are stored within electronic storage devices that also separately contain visual depictions of child pornography, the seizure of which exceeded the scope of the warrant.

4.    The district court's preliminary order of forfeiture forfeiting Sanders's electronic storage devices "in their entirety," including legally possessed, non-

contraband files stored within those devices, violated the Eighth Amendment requirement of proportionality in sentencing.

## STANDARD OF REVIEW

In criminal forfeiture proceedings, this Court reviews the district court's findings of fact for clear error and the district court's legal interpretations *de novo*. *United States v. Morgan*, 224 F.3d 339, 342 (4th Cir. 2000); *United States v. Martin*, 662 F.3d 301 (4th Cir. 2011). This Court also reviews *de novo* questions of statutory interpretation. *Taylor v. Grubbs*, 930 F.3d 611, 616 (4th Cir. 2019) (citing *Natl. Ass'n of Mfrs. v. Dep't. of Def.*, ___ U.S. ___, 138 S. Ct. 617, 631 (2018)); *Ignacio v. United States*, 674 F.3d 252, 254 (4th Cir. 2012); *United States v. Ide*, 624 F.3d 666, 668 (4th Cir. 2010).

The denial of a Rule 41(g) motion for the return of seized property is reviewed for an abuse of discretion. *United States v. Mora*, 353 Fed. Appx. 792, 793 (4th Cir. 2009) ("A district court abuses its discretion when it fails or refuses to exercise its discretion or when its exercise of discretion is flawed by an erroneous legal or factual premise") (internal citations omitted).

Finally, as to errors to which the appellant failed to make a timely objection, a reviewing court must examine the appellant's arguments under the "plain error" standard set out in Fed. R. Crim. Pro 52(b). *United States v. Olano*, 507 U.S. 725, 731 (1993).

## ARGUMENT

I. **Electronic storage devices are not "other matter" forfeitable under 18 U.S.C. § 2253(a)(1).**

This case requires the Court to decide whether the term "other matter" as used in 18 U.S.C. § 2253(a)(1), refers to electronic files which contain visual depictions of child pornography, or to the storage devices that contain the electronic files.

The forfeiture of property in child pornography cases is governed by 18 U.S.C. § 2253(a). Section 2253(a)(1) provides that any person convicted of a child pornography offense shall forfeit such person's interest in—

> any visual depiction . . . or any book, magazine, periodical, film, videotape, or *other matter* which contains any such visual depiction [of child pornography].

(emphasis added). The proper scope of the statutory provision is a question of first impression for this Court.

The district court held that the provisions of § 2253(a) "unambiguously require[d] forfeiture of [Sanders's] electronic devices in their entirety," and that he was not entitled to the return of non-contraband files stored within those devices. JA225. The court further held that because § 2253(a)(1) "makes no exception for non-contraband material contained on the electronic devices," § 2253(a)(1) required forfeiture of "the *matter* containing the visual depictions—i.e., the electronic storage devices." (emphasis added). JA227. As demonstrated below, the district court was plainly wrong.

11

**A. In determining the meaning of statutory terms, courts turn to basic principles of statutory construction requiring that terms be given their plain meaning by reference to the context in which those terms are used.**

As this Court has made clear in statutory interpretation cases, "[the Court] begins with the text of the statute, 'read in the specific context in which that language is used, and the broader context of the statute as a whole.'" *Taylor v. Grubbs*, 930 F.3d 611, 616 (4th Cir. 2019) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)). Where the text is unambiguous, the inquiry is complete. *Nat'l Ass'n of Mfrs. v. Dep't of Def.*, ⸺ U.S. ⸺, 138 S. Ct. 617, 631 (2018); *Lee v. Norfolk S. Ry. Co.*, 802 F.3d 626, 631 (4th Cir. 2015). The plainness or ambiguity of statutory language is determined by the text of the statute. *Grubbs*, 930 F.3d at 616; *Ignacio v. United States*, 674 F.3d 252, 254 (4th Cir. 2012); *Norfolk S. Ry.Co.*, 802 F.3d at 631 (quoting *Yates v. United States*, 574 U.S. 528, 537 (2015)).

When interpreting a statute, courts must "first and foremost strive to implement congressional intent by examining the plain language of the statute." *United States v. George*, 946 F.3d 643, 645 (4th Cir. 2020) (quoting *United States v. Abdelshafi*, 592 F.3d 602, 607 (4th Cir. 2010)). As a result, absent ambiguity or a clearly expressed legislative intent to the contrary, this Court applies the plain meaning of the statute, which is "determined by reference to its words' 'ordinary meaning at the time of the statute's enactment.'" *George*, 946 F.3d at 645 (internal citations omitted).

12

Since there is no statutory definition of "other matter" in § 2253, the Court must first look to the words' ordinary dictionary meaning. *Id*. at 646. The relevant dictionary definitions of "matter" range from "the substance of which a physical object is composed" to "material substance that occupies space."[4] But, as the Supreme Court explained, "[w]hether a statutory term is ambiguous does not turn solely on dictionary definitions of its component words." *Yates v. United States*, 574 U.S. 528, 537 (2015). When a term as broad as "other matter" appears in a statute, the text is better read within the "specific context in which the language is used." *Id*. at 546.

### B. The text of § 2253(a)(1) must be read to include only "other matters" from which child pornography cannot be removed or separated out without materially altering or destroying the matter.

Nothing in the text or context of § 2253(a)(1) or its legislative history indicates that Congress intended to broaden the meaning of "other matters" beyond those matters sharing the same attributes as books, magazines, films, or videotapes. In order to avoid giving unintended breadth to the Acts of Congress, the statutory phrase "other matter which contains any such visual depiction" must be read to include only "matters" that share features common to books, magazines, periodicals,

---

[4] Matter, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/matter (last visited Dec. 15, 2022). There is no legal definition of matter. See Matter; BLACK'S LAW DICTIONARY (11th ed. 2019)

films, and videotapes—i.e., items which can be separately viewed, copied, and transmitted, and from which content cannot be removed without destroying their original form. See *Yates v. United States*, 574 U.S. 528 (2015).[5] Electronic storage devices, unlike the files stored within them, share none of these features.

Nor does child pornography often appear in books, magazines, periodicals, films, and videotapes that are not also dedicated to that content further distinguishing them from storage devices like computers and cellphones which rarely store information solely devoted to child pornography. Because the focus of § 2253(a)(1) is to remove depictions of child pornography from circulation, forfeiting physical devices storing large quantities of personal information unrelated to any child

---

[5] In *Yates*, a commercial fisherman who had ordered his crew to toss illegally caught fish back into the ocean to prevent government agents from spotting that he had violated fishing regulations was charged with violating 18 U.S.C. § 1519. *Yates*, 574 U.S. at 531. That provision provides that "[w]hoever knowingly alters, destroys . . . any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States . . . shall be fined . . . or imprisoned not more than 5 years, or both." The government argued that the fish thrown back into the water were "tangible objects," relying on the dictionary definition. *Id*. The Supreme Court rejected this "unrestrained" interpretation of the phrase because "tangible object" was "last in a list of terms that begins 'any record [or] document," and "is therefore appropriately read to refer, not to any tangible object, but specifically to the subsect of tangible objects involving records and documents, i.e., objects used to record or preserve information." *Id*. at 544. The Court also observed that "Congress would have had no reason to refer specifically to 'record' or 'document' "had Congress "intended 'tangible object' in § 1519 to be interpreted so generically as to capture physical objects as dissimilar as documents and fish." *Id*.

pornography offense does not advance the purposes of subsection (a)(1) or reduce the amount of child pornography in circulation and was not a proper basis upon which to forfeit Sanders's legally possessed filed.

### C. The structure of § 2253(a) as a whole supports a narrower interpretation of "other matter."

The structure of § 2253(a) also cuts against the district court's reading of "other matter." As this Court stated in *United States v. Johnson*, 915 F.3d 223 (4th Cir. 2019), "we 'interpret the relevant words not in a vacuum, but with reference to the statutory context.'" *Id*. at 229 (quoting *Torres v. Lynch*, ⸺ U.S. ⸺, 136 S. Ct. 1619, 1626 (2016)).

Section 2253(a) is divided into three sections. The first, (a)(1), plainly targets visual depictions containing child pornography. The second, (a)(2), targets the proceeds of child pornography offenses. Section 2253(a)(3) serves to target property used to commit these offenses which necessarily includes any physical and electronic containers used to store child pornography.[6] In order to give meaning to subsection (a)(1), it must be interpreted to have some purpose other than that intended by subsection (a)(3) or the language in the subdivision would be superfluous. See

---

[6] Indeed, at the forfeiture hearing, Sanders conceded that § 2253(a)(3) required the forfeiture of the eight physical devices found to contain child pornography as property used to commit or facilitate an offense of conviction. JA179.

*Yates*, 574 U.S. at 543 ("We resist a reading of § 1519 that would render superfluous an entire provision passed in proximity as part of the same Act").

The placement of "other matter" after a series of terms with these shared features also signals that the term "other matter," was not intended to include "all matters" or to have an all-encompassing meaning. *Yates*, 574 U.S. at 545 ("Where general words follow specific words in a statutory enumeration, the general words are [usually] construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words.") (quoting *Washington State Dept. of Social and Health Servs. v. Guardianship Estate of Keffeler*, 537 U.S. 371, 384 (2003). Had Congress intended "other matter" in § 2253(a)(1) to be interpreted so generically as to capture physical objects as dissimilar as videotapes and computers, it would have had no reason to specifically refer to "books," "magazines," or "periodicals," or to include the examples at all. See *Yates*, 574 U.S. at 545-46.

By including the terms "books, magazines, periodicals, films, and videotapes" in subsection (a)(1), Congress signaled its intent to limit the term "other matter" to items that are similar in nature to the words preceding it. The failure to read subsection (a)(1) as targeting depictions of child pornography and not the storage devices that contain them, and (a)(3) as focusing on the instrumentalities used to commit the crime, would render an entire subsection of § 2253(a) superfluous and

16

ignore the overall statutory scheme.  The plain language of the statute requires that the two subsections be given different meanings.

Congress further signaled its intent to limit the meaning of "other matter" when it amended 18 U.S.C. § 2252(a)(4) in 1998.  Section 2252(a)(4)(B) criminalizes certain conduct relating to material involving the sexual exploitation of minors, making it a crime, among other things, to:

> (B) knowingly possesses, or knowingly accesses with intent to view, *1 or more books, magazines, periodicals, films, video tapes, or other matter* which contain any visual depiction . . . which was produced using materials which have been mailed or so shipped or transported, by any means *including by computer* . . .

Pub. L. 104-208 (emphasis added).  Congress would not have needed to include the phrase "including by computer" if it intended "other matter" to also include electronic storage devices like a computer.

**D. Every court that has construed the phrase "any book, magazine, periodical, film, videotape, or other matter," or a related provision in a prior version of the Sentencing Guidelines has concluded that files, not electronic storage devices are "other matter," with one exception. That case has been called into question.**

With one exception, cases interpreting the term "other matter" in prior versions of 18 U.S.C. § 2252(a)(4), and a related provision in U.S.S.G. § 2G2.4, all support Sanders's reading of the statute.  Until it was amended in 1998, 18 U.S.C. § 2252(a)(4)(B) prohibited the possession of three or more "books, magazines, periodicals, films, video tapes, or *other matter* which contain any visual depiction"

of child pornography.  Pub. L. 104-208, Sept. 30, 1996, 110 Stat. 3009-30 (emphasis added).  In *United States v. Vig*, 167 F.3d 443 (8th Cir. 1999), the issue on appeal was whether the defendants could be convicted under that prior version of § 2252(a)(4)(B) when the visual depictions of child pornography were saved in three or more computer image files that were located on only a single computer hard drive. *Id*. at 446.  Vig argued that "other matter" referred to the physical medium that contained the visual depictions—the computer hard drive—and therefore the evidence was insufficient to convict him of possessing three or more "other matter." Unsurprisingly, the government argued, as Sanders does here, that "other matter" refers to the computer files containing the image, *not* the physical storage medium. *Id*. at 446-47.

In the absence of a statutory definition for the term "other matter," or what the court considered a clearly expressed legislative intention to the contrary, the Eighth Circuit looked to the plain language of the statute and the ordinary, commonsense meaning of the words to determine congressional purpose.  Relying largely on *United States v. Hall*, 142 F.3d 988 (7th Cir. 1998) and *United States v. Fellows*, 157 F.3d 1197 (9th Cir. 1998), two decisions interpreting prior versions of § 2252(a)(4)(B) and U.S.S.G. § 2G2.4(b)(2), the court in *Vig* held that the plain

common sense meaning of "other matter" referred to computer image files. *Id*. at 447-48.[7]

In *Hall*, the Seventh Circuit considered whether the files stored within a computer that also contained depictions of child pornography could be considered "matter," "items," or "material" for purposes of U.S.C. § 2252(a)(4)(B). Adopting the views of several other courts, the court in *Hall* held that:

> [a]lthough the statute does not define "other matter" or "materials," plain meaning suggests a prohibition of three or more of anything containing a visual depiction transported in interstate commerce. In this case, the "other matter" or "materials" are the 403 individually-named computer files Hall received in interstate commerce via AOL.

*Id*. at 999.

A year later, the Ninth Circuit applied the same § 2G2.4(b)(2) enhancement to a defendant who pled guilty to possessing more than 10 computer graphics files of child pornography in *United States v. Fellows*, 157 F.3d 1197 (9th Cir. 1998). There, the defendant also argued that the two-level enhancement should not apply to his sentence because the computer graphics files he possessed were all found on one computer—i.e., one "item." *Id*. at 1199, 1201. At the time, U.S.S.G.

---

[7] Finding no ambiguity in the statute, the court also rejected the Ninth Circuit's conclusion in *United States v. Lacy*, 119 F.3d 742 (9th Cir. 1997), that a hard drive is the computer equivalent of a book, magazine, or periodical, as well as the defendants' reliance on legislative history from a subsequent Congress to infer the intent of an earlier Congress for purposes of statutory construction. *Vig*, 167 F.3d at 448-49.

§ 2G2.4(b)(2) provided for a two-level enhancement "[i]f the offense involved possessing ten or more books, magazines, periodicals, films, video tapes or *other items*, containing a visual depiction involving the sexual exploitation of a minor." *Id*. at 1200 (emphasis added). The court disagreed, finding that "a graphic file in a computer [not the computer itself] counts as an 'item' under U.S.S.G. § 2G2.4(b)(2)." *Id*. at 1201. More specifically, the Ninth Circuit found that:

> The commonality between the "items" specifically enumerated in the section is that they are all discrete containers for visual depictions capable of being separately manipulated and distributed.
>
> *The closest cousin to "books, magazines, periodicals, films, [or] video tapes" in the computer is a computer file. Visual depictions in a computer are compiled and stored in graphics files, much like photographs are compiled and stored in books or magazines*. As the district court recognized, the computer user can separately view, copy, delete, or transmit each discrete graphics file. Like the other "items" listed in the guideline section, a graphics file can store one or more visual depictions. The similarities between computer graphics files and the other "items" are manifest. Because the graphics file is the container used for compiling and storing visual depictions in a computer, it qualifies as an "item" under the plain language of U.S.S.G. § 2G2.4(b)(2).

*Id*. (emphasis added).

> Even more to the point, the court ruled that:
>
> A computer hard drive is much more similar to a library than a book; . . . Each file within the hard drive is akin to a book or magazine within that library. Thus, the files, not the hard drive, count as "items" under U.S.S.G. § 2G2.4(b)(2).

*Id*.

Other courts considering convictions under a similar child pornography statute have also concluded that the term "item" used in U.S.S.G. § 2G2.4(b)(2) means computer files, not the entire computer or hard drive.  See e.g., *United States v. Thompson*, 281 F.3d 1088, 1091-92 (10th Cir. 2002) (agreeing with *Fellows* and other circuits that files, not hard drives, are "other items" under the guideline); *United States v. Harper*, 218 F.3d 1285, 1287 (11th Cir. 2000) (per curium) (agreeing with *Fellows* that each file, and not the entire computer disk equates with a book or magazine for purposes of § 2G2.4(b)(2)); *United States v. Demerritt*, 196 F.3d 138, 143 (2d Cir. 1999) (agreeing with *Fellows* and others that under the plain meaning of U.S.S.G. § 2G2.4(b)(2), computer files are "items").

Employing the same argument that the government has successfully advanced in prior cases, the term "other matter," as used in § 2253(a)(1) clearly refers to individual computer files that contain the child pornography, not to the entirety of the device itself as the district court held.

### E. The Rule of Lenity requires that this Court interpret the reach of § 2253(a)(1) in the manner that is most favorable to Sanders.

The plain meaning of "other matter" should end this Court's inquiry. However, if ambiguity is present in the statute, that ambiguity must be resolved in Sanders's favor.

Beyond the general tools of statutory interpretation, "special considerations govern[ ] the interpretation of criminal statutes." *United States v. Hilton*, 701 F.3d

21

959, 966 (4th Cir. 2012).  Criminal statutes are "strictly construed and should not be interpreted to extend criminal liability beyond that which Congress has plainly and unmistakenly proscribed." *Id*. (internal quotation marks omitted).  When ambiguity is present in criminal statutes, that ambiguity "must be resolved in favor of lenity for the accused."  *United States v. George*, 946 F.3d 643, 645 (4th Cir. 2020) (quoting *United States v. Sheek*, 990 F.2d 150, 153 (4th Cir. 1993).  See also *Reno v. Koray*, 515 U.S. 50, 65 (1995) ("The rule of lenity applies only if, 'after seizing everything from which aid can be derived,' we can make 'no more than a guess as to what Congress intended.'" (internal citations omitted)).

Thus, to the extent ambiguity exists in the statute, § 2253(a) should be strictly construed and the rule of lenity applies.

## II.     Sanders's non-contraband electronic files are separate "property" from the tangible devices in which they are stored and are not subject to forfeiture pursuant to 18 U.S.C. § 2253(a)(3).

18 U.S.C. § 2253(a)(3) provides that a person convicted of an offense under Chapter 110 of Title 18 involving depictions of child pornography "shall forfeit to the United States such person's interest in . . . (3) any property, real or personal, used or intended to be used to commit or to promote the commission of such offense or any property traceable to such property."

"Property," in this context, is a statutorily defined term.  Specifically, § 2253(b) incorporates by reference "Section 413 of the Controlled Substances

Act (21 U.S.C. § 853), with the exception of subsections (a) and (d) . . ." 18 U.S.C. § 2253(b). Consequently, the following definitions apply when construing the meaning of the term "property" for purposes of § 2253(a)(3):

Meaning of term "property"

> Property subject to criminal forfeiture under this section includes—
> (1)  real property, including things growing on, affixed to, and found in land; and
>
> (2) tangible and *intangible personal property*, including rights, privileges, interests, claims, and securities.

21 U.S.C. § 853(b) (emphasis added).

The district court's ruling that the electronic devices are forfeitable "in their entirety," ignored the plain language of § 853(b) and would render the terms "tangible" and "intangible" superfluous.

## A. Non-contraband electronic files are separate items of property from the physical medium on which they are stored.

In addition to the plain language of the statute, the treatment of digital information in other areas of criminal law and common experience are also inconsistent with the district court's characterization of the non-contraband files as part of the forfeitable devices. JA226.

### 1. *The physical storage devices and the files within those devices are not a single piece of property.*

Courts interpreting forfeiture provisions in other areas of criminal law have looked to the instrument creating the defendant's interest in property as the "logical" or "natural" sources when determining what constitutes "property" subject to forfeiture. For example, the Sixth Circuit refused to forfeit a four-tract farm used to grow marijuana even though the defendant used only part of the property for that purpose where the defendant initially obtained his interest in the whole of each of the four tracts by virtue of four separate deeds. See *United States v. Smith*, 966 F.2d 1045, 1054-56 (6th Cir. 1992).

Similarly, in *United States v. One 1998 Tractor*, 288 F. Supp. 2d 710 (W.D. Va. 2003), aff'd sub nom., *United States v. Shimshiryan*, 117 F. App'x 863 (4th Cir. 2004), the court held that the tractor and trailer owned by a truck driver who pled guilty to transporting contraband cigarettes did not constitute one vehicle subject to forfeiture because the tractor and trailer were purchased separately, had separate titles, and separate vehicle identification numbers. *Id*. at 713 (citing *United States v. Santoro*, 866 F.2d 1538, 1543 (4th Cir. 1989)).

Extending this logic from physical to digital storage, files that did not come with the physical storage devices when they were purchased, can be moved to different devices, and are not necessary to make the devices work do not constitute a single piece of property subject to forfeiture under § 2253(a)(3). As such, the later

acquired, non-contraband files on Sanders's devices are not forfeitable property where only the devices and a portion of the files stored in those devices were used for a prohibited purpose.

### 2. Treating non-contraband computer files on a storage device as separate property that the government is required to return is in keeping with what numerous other courts have previously held.

Drawing on analogies to closed containers or file cabinets, common sense also dictates that a computer is a repository for files in electronic form just as a file cabinet or footlocker is a repository for tangible items such as papers and other personal effects. Just as no reasonable person would consider his paper documents part of a file cabinet, electronic files are not a permanent part of the physical devices in which they are stored.

Similarly, courts often draw analogies between computers and physical storage units such as file cabinets and closed containers when applying established Fourth Amendment principles, finding the differences between computers and physical repositories of personal information and effects legally insignificant. For example, in *United States v. Trulock*, 275 F.3d 391, 403 (4th Cir. 2001), this Court held that joint access to a shared computer did not give one user authority to consent to the search of the other user's password protected files. There, the Court implicitly found that electronic files, like their physical counterparts, can have separate owners and should be treated as separate property from the containers in which they are

25

stored. See also *United States v Yu Qin*, 688 F.3d 257, 259-60, 264-65 (6th Cir. 2012) (equating stolen proprietary files copied onto an employee's personal hard drive with physical documents belonging to the employer); *In re Grand Jury Subpoena Duces Tecum*, 846 F. Supp. 11, 12–13 (S.D.N.Y. 1994) (analogizing computer hard drives and floppy disks that contained electronic documents to file cabinets that contained paper documents in deciding that subpoena for computer-accessible data was unreasonably broad); *United States v. David*, 756 F. Supp. 1385, 1390 (D. Nev. 1991) (recognizing that a computer memo book "is indistinguishable from any other closed container, and is entitled to the same Fourth Amendment protection").

In *United States v. Williams*, 592 F.3d 511 (4th Cir. 2010), this Court endorsed the principle that the sheer amount of information contained on a computer does not distinguish the authorized search of the computer from an analogous search of a file cabinet containing a large number of documents, holding that neither is legally relevant in the Fourth Amendment context. *Id*. at 523-24. Notably, the Court reasoned that:

> At bottom, we conclude that the sheer amount of information contained on a computer does not distinguish the authorized search of the computer from an analogous search of a file cabinet containing a large number of documents. As the Supreme Court recognized in *Andresen*, "[T]here are grave dangers inherent in executing a warrant authorizing a search and seizure of a person's papers that are not necessarily present in executing a warrant to search for physical objects whose relevance is more easily ascertainable." (citation omitted). While that danger certainly counsels care and respect for privacy when executing a warrant, it does not prevent officers from lawfully searching the

documents, nor should it undermine their authority to search a computer's files. See *United States v. Giberson*, 527 F.3d 882, 888 (9th Cir.2008) (holding that "neither the quantity of information, nor the form in which it is stored, is legally relevant in the Fourth Amendment context"). We have applied these rules successfully in the context of warrants authorizing the search and seizure of non-electronic files, see *Crouch*, 648 F.2d at 933–34, and we see no reason to depart from them in the con text of electronic files.

*Id*. The Court further instructed that:

When a search requires review of a large collection of items, such as papers, "it is certain that some innocuous documents will be examined, at least cursorily, in order to determine whether they are, in fact, among those papers authorized to be seized." (citations omitted) . . . If, in those circumstances, documents not covered by the warrant are improperly seized, the government should promptly return the documents

*Id*. at 519-20.

More recently, in *In re Search Warrant Issued June 13, 2019*, 942 F.3d 159, (4th Cir. 2019), as amended (Oct. 31, 2019), this Court was required to rule on the government's use of a taint team to examine the fruits of a law office search. There, the Court made clear its intention that electronic files stored on a lawyer's computers and an iPhone were to be treated as separate property from the devices themselves for Fourth Amendment purposes. Rejecting the use of a government taint team, the Court remanded the case with instructions to the magistrate judge to individually review file extractions from a lawyer's iPhone, an iPad belonging to the law firm, and a laptop belonging to a firm associate; identify materials not covered by the search warrant and return them to the law firm; and conduct a privilege evaluation

of the remaining materials. *Id*. at 170. The Court also ordered the approximately 52,000 emails extracted from the lawyer's devices that were outside the scope of the warrant to be returned to the law firm like their physical counterparts. *Id*. at 166-67; 170, 183. The seizure of the legally possessed, non-contraband files on Sanders's devices similarly exceeded the scope of the warrant requiring their return.

Treating individual files on a storage device as separate property that the government was required to return is also in keeping with what numerous other courts have previously held. See e.g. *United States v. Comprehensive Drug Testing, Inc*., 621 F.3d 1162, 1171-72 (9th Cir. 2010) (holding that "equitable considerations" required sequestration and return of imaged copies of electronically stored drug-testing records for hundreds of Major League baseball players intermingled with drug-testing records for ten athletes named in a separate warrant that the government's forensic specialist copied during a search rather than seizing the entire hard drive or the computer); *United States v. Metter*, 860 F. Supp. 2d 205, 215, 216 (E.D.N.Y. 2012) (holding that government may not seize and image electronic data and then retain the imaged data with no plans to review the information to determine whether irrelevant, personal data was improperly seized as outside the scope of the warrant; *United States v. Debbi*, 244 F. Supp. 2d 235, 237-38 (S.D.N.Y. 2003) (finding Fourth Amendment violation in search, seizure, and retention of seven boxes of documents from defendant's home which included "personal and religious

28

files, general correspondence, [and] family financial records," when "no meaningful attempt" was made to separate and retain only the items the warrant permitted to be seized).

Neither case law nor common sense suggests any reason to distinguish a computer from an analogous file cabinet containing a large number of documents when determining whether property was improperly seized, or to conclude that the district court did not conflate Sanders's electronic files and the devices within which they are stored when concluding that the non-contraband files were properly subject to forfeiture.

### B. The district court's reliance on *Noyes* and *Wernick* was misplaced.

The district court's reliance on *United States v. Noyes*, 557 Fed. App'x 125 (3d Cir.2014) (unpublished) and *United States v. Wernick*, 673 Fed. App'x. 21 (2d Cir. 2016) (unpublished), was also misplaced. JA228-229. First, both *Noyes* and *Wernick* were largely decided on procedural grounds. Specifically in *Noyes*, the court held that Noyes waived his appeal to the denial of his Rule 41(g) motion after he consented to the entry of a final order of forfeiture. The court held that Noyes was required to challenge the scope of the forfeiture order on direct appeal which he failed, unlike Sanders, to do. Notably, the court also failed to consider the statutory definition of "property" in 21 U.S.C. § 853 when construing § 2253(a)(3), assuming

instead that Noyes's computers and non-contraband files were all a single piece of "property," as the district court did here.  See *id*. at 127.

The district court's reliance on *United States v. Wernick* was also misplaced. Wernick appealed the denial of a Rule 41(g) motion seeking the return of all data not containing child pornography on his electronic devices after agreeing to the entry of an order of forfeiture that required him to surrender "all of his right, title and interest" to the seized devices.[8]  *Id*. at 25.  Unlike Wernick, Sanders objected to the entry of the preliminary order of forfeiture.  The Second Circuit summarily held that "even absent waiver, the district court did not err in denying Wernick's Rule 41(g) motion, but expressly declined to decide whether under § 2253(a)(3), "defendants in some cases may retain interests in data unconnected to criminal activity that is stored on a hard drive that is itself forfeitable because it was 'used ... to commit or to promote the commission of [a child pornography] offense.'"  *Id*. at 25-26.  This is such a case.

---

[8] Wernick did not seek return of specific files of a clearly non-criminal nature and of high personal value that could readily be disentangled from the devices used to further his criminal activities.  Rather, he sought the return of all non-pictorial files on the hard drive, as well as metadata relating to all files.  The court held that was impossible to confidently conclude that none of the data requested was in-fact not used to facilitate the offenses of conviction and that "thousands and thousands of hours" would be required to segregate the computer data as Wernick requested— circumstances not present in Sanders's case.  673 F. App'x at 25.

Although there is considerable case law interpreting forfeiture statutes, few courts have articulated the contours of a Rule 41(g) motion where the defendant is seeking the return of non-contraband "property," and objects to the entry of a forfeiture order before the order is entered. Here, it was Sanders's Rule 41(g) motion that triggered the government's request for a preliminary order of forfeiture. The burden of proof on a Rule 41(g) motion "depends on when the defendant files the motion." *United States v. Wright*, 49 F.4th 1221, 1225, 1228 (9th Cir. 2022). The burden was therefore on the government to establish a legitimate reason to withhold the non-contraband files which it failed to do. Because the non-contraband image and data files were outside the scope of the warrant and not themselves forfeitable, the files should have been segregated and returned.[9]

### III. Forfeiture of Files Containing Sanders's Only Record of His Personal, Academic and Professional Life, Unrelated To An Offense Of Conviction, Would Violate The Eighth Amendment's Requirement Of Proportionality In Sentencing.

Sanders concedes, as he must, that he failed to raise his Eighth Amendment challenge to the government's motion for a preliminary order of forfeiture. Accordingly, Sanders's Eighth Amendment claim is reviewable for plain error.

---

[9] The prosecution also greatly exaggerated burden on the FBI and the number of files at issue, as well as mischaracterizing the capabilities of artificial intelligence software used by law enforcement to detect and analyze child pornography content in cases involving millions of images and videos as reasons for not returning the files. JA141.

However, even under a plain-error standard of review, the district court's forfeiture of non-contraband files containing the artifacts of Sanders's personal, family and business life was unconstitutionally excessive under the Eighth Amendment's Excessive Fines Clause.  See *United States v. Jalaram, Inc.*, 599 F.3d 347, 354 (4th Cir. 2010).

### A. The forfeiture order was grossly disproportional relative to the gravity of a defendant's offense.

The Eighth Amendment dictates that "[e]xcessive bail shall not be required, *nor excessive fines imposed*, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII (emphasis added).  Specifically, the Excessive Fines Clause "limits the government's power to extract payments, whether in cash *or in kind*, 'as punishment for some offense.'" *Austin v. United States*, 509 U.S. 602, 609–610, (1993) (emphasis added).  Indeed, the Supreme Court has held that "[f]orfeitures— payments in kind—are thus "fines" if they constitute punishment for an offense." *United States v. Bajakajian*, 524 U.S. 321, 328 (1998).

In *United States v. Jalaram*, 599 F.3d 347 (4th Cir. 2010), this Court undertook a detailed analysis of *Austin v. United States*, 509 U.S. 602 (1993), *Alexander v. United States*, 509 U.S. 544 (1993), and *United States v. Bajakajian*, 524 U.S. 321 (1998), the three principal Supreme Court cases analyzing the Excessive Fines Clause in the context of criminal forfeiture.  The Court concluded that the Supreme Court has consistently:

32

> reaffirmed that the *type of property at issue was irrelevant* to the issue of whether the forfeiture constituted punishment.   Instead, the [Supreme] Court [has] [] focused on whether the forfeiture stemmed, at least in part, from the property owner's criminal culpability.   If so, the forfeiture does constitute punishment and so is subject to proportionality review under the Excessive Fines Clause.

*Jalaram, Inc*., 599 F.3d at 354 (emphasis added).  As such, so long as the forfeiture "stems []from the property owner's criminal culpability[,]" it is subject to the protections guaranteed by the Excessive Fines Clause.  *Id*.

There is little doubt that the forfeiture portion of Sanders's sentence which stemmed entirely from his criminal convictions is subject to the protections guaranteed by the Excessive Fines Clause.  Although unnecessary to its decision, the district court also opined that Sanders was "the one who decided to commingle family photographs and business records with images of child pornography," finding that "any burden to the Defendant in this case is the result of the Defendant's own wrongdoing." JA233.  Thus, even the district court believed that the forfeiture of non-contraband files containing Sanders's personal and closely held information was punishment, and as such, should have been subject to the Eighth Amendment's proportionality analysis.

In criminal forfeiture cases, "[t]he touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality: the amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish." *United States v. Bennett*, 986 F.3d 389, 399 (4th Cir. 2021),

cert. denied, 142 S. Ct. 595 (2021) (internal citations omitted).  A punitive forfeiture violates the Excessive Fines Clause when it is "grossly disproportional to the gravity of a defendant's offense." *Bajakajian*, 524 U.S. at 334.

When determining whether a given forfeiture is "grossly disproportional," courts in this Circuit must weigh the so-called "*Jalaram* factors," specifically: (1) the forfeiture itself and its relationship to the authorized penalty; (2) the nature and extent of the criminal activity; (3) the relationship between the charged crime and other crimes; and (4) the harm caused by the charged crime.  *Jalaram, Inc.*, 599 F.3d at 355–56; *Bajakajian*, 524 U.S. at 337-39.

Here, the authorized penalty in Sanders's case was a fine of up to $250,000 for each count; a total possible special assessment of $1,200; a Justice for Victims of Trafficking ("JTVA") total assessment of $60,000; a possible child pornography ("AVAA") special assessment of up to $50,000 on Counts 1-5, and up to $17,000 on Count 12.  See 18 U.S.C. § 3571; 18 U.S.C. § 3013; 18 U.S.C. § 3014; 18 U.S.C. § 2259A.  Ultimately, the district court imposed a special assessment of $1,200, a JTVA assessment of $60,000, and restitution in the amount of $6,000, but no AVAA assessment.  JA58-59.

However, in enacting these monetary penalties, Congress did not impose a penalty that had the practical effect of stripping a defendant of his personal history that happened to be stored on electronic media.  Indeed, in *Riley v. California*, 573

34

U.S. 373 (2014), where the Supreme Court granted to cell phones the same protections guaranteed a home under the Fourth Amendment, the Court described cell phones as not just another technological convenience, but "with all [they] contain and all they may reveal, they hold for many Americans "the privacies of life[.]" *Id*. at 403. The Court's characterization of the data found on cell phones was based on the understanding that "more than 90% of American adults who own a cell phone keep on their person a digital record of nearly every aspect of their lives— from the mundane to the intimate." *Id*. at 395.

Moreover, in *Riley*, the Supreme Court rejected the government's analogy that the search of a cell phone is materially indistinguishable from a search of other small personal items carried on an individual which hold personal effects. In so doing, the Court recognized that the contents of digital storage devices are nothing like every day "containers" of personal effects and deserve heightened constitutional protection:

> [Saying] that a search of all data stored on a cell phone is "materially indistinguishable" from searches of these sorts of physical items [] is like saying a ride on horseback is materially indistinguishable from a flight to the moon. Both are ways of getting from point A to point B, but little else justifies lumping them together… Cell phones differ in both a quantitative and a qualitative sense from other objects.

*Id*. at 393. The Court went on to state that "[a] phone not only contains in digital form many sensitive records previously found in the home; it also contains a broad

35

array of private information never found in a home in any form—unless the phone is." *Id*. at 396-97.

The same principles expressed in *Riley* necessarily apply to a criminal forfeiture proceeding.   It bears repeating that Sanders only seeks the return of a subset of lawfully possessed files containing the "privacies" of his life.   Given the incalculable value of such property, the forfeiture of the entire contents of the nine devices was disproportional to Congress' authorized penalty.

### B. The wholesale forfeiture of Sanders's personal, non-contraband files is grossly disproportional.

In *United States v. Jalaram, Inc.*, this Court applied the four factors set out above, created by the Supreme Court in *Bajakajian*, to determine whether the forfeiture violated the Excessive Fines Clause as "grossly disproportional to the gravity of Jalaram's offense."

In *Jalaram*, the Court held that the criminal forfeiture of $358,390.22 of the corporate defendant's proceeds from money laundering and Mann Act offenses was not grossly disproportional to the gravity of its offenses where the criminal activity generated hundreds of thousands of dollars in illicit revenues, spanned six months, the crimes charged were connected with other offenses including systematic tax evasion, the defendant played a significant role in the conspiracy, and the defendant's agent furthered the daily activities of the ring during that entire period. *Id*. at 356-57.

Conversely, in Sanders's case, none of the non-contraband files bear any relationship to any of the charged crimes or to any other crimes with which Sanders could have been charged. Indeed, they bear no relationship to any criminal activity whatsoever. Significantly, the district court imposed $6,000 in restitution, $60,000 in financial penalties under the Justice for Victims of Trafficking Act ("JTVA"), but no additional penalties under the Child Pornography Victim Assistance Act ("AVAA") as its measure of the harm caused to Sanders's purported victims.[10]

Furthermore, the non-contraband files bear no relationship to the ill-defined harm caused by the charged offenses. At no time did Sanders publicly or privately share, distribute, or upload images or traffic in sexually explicit materials. The eleven production and receipt counts involved teens who sought out Sanders's attention and voluntarily sent him videos and images they willingly took while engaging in consensual acts that they could legally perform on themselves.[11] Three of the six individuals who sent him their images were age 16 or older, and all had initially contacted Sanders on dating websites where they had certified that they were

_____

[10] In addition to any other criminal penalty, restitution, or special assessment, the court could have imposed an additional assessment of up to $67,000 under the AVAA, 18 U.S. C. § 2259A(a)(1) & (3).

[11] The government's forensic expert never established that Sanders had viewed the videos that were the basis for the possession count (Count 12).

at least 18 years of age. Three of the six were also older teens with whom Sanders had established long-term personal relationships apart from the offense conduct.

In these circumstances, the forfeiture of a lifetime of Sanders's one-of-a-kind personal photographs and records that played no part in the charged offenses bears no relationship to the gravity of the offense that it is designed to punish and is grossly disproportional to the nature and extent of the criminal activity in violation of the Eighth Amendment.

### C. The forfeiture of Sanders's non-contraband files does not prevent the further spread of child exploitation material and is not in keeping with the purpose of criminal forfeiture.

Forfeiting Sanders's non-contraband personal files, which were not used to facilitate the commission of any criminal offense and are not specifically covered by the forfeiture statute, is not in keeping with the purpose of criminal forfeiture – namely preventing the further spread of child exploitation material, protecting the victims of such material from repeated victimization, and confiscating the fruits of criminal activity. See *United States v. Martin*, 662 F.3d 301, 309 (4th Cir. 2011) ("the substantive purpose of criminal forfeiture is … to deprive criminals of the fruits of their illegal acts and deter future crimes").

In October 1998, the Senate took up debate on H.R. 3494, titled the Protection of Children From Sexual Predators Act of 1998. Among the many changes H.R. 3494 made to the child pornography statute, it provided for several minor changes

to 18 U.S.C. § 2253 (criminal forfeiture) and § 2254 (civil forfeiture) by adding

additional offenses which would result in criminal and civil forfeiture.[12]  See 144

Cong. Rec. S12257-01, S12259, 1998 WL 701518.

During the debate on H.R. 3494 in the Senate, speaking to the purpose of the

child pornography statutory scheme, Senator Hatch stated in part:

> "How does this bill provide additional protection for our children?
> …law enforcement is given effective tools to pursue sexual predators.
> The Attorney General is provided with authority to issue administrative
> subpoenas in child pornography cases. *Proceeds derived from these*
> *offenses, and the facilities and instrumentalities used to perpetuate*
> *these offenses, will be subject to forfeiture.* And prosecutors will have
> the power to seek pretrial detention of sexual predators prior to trial"

*Id*. (emphasis added).

As evident from the floor debate, Congress intended the child pornography

forfeiture statute to mirror the commonly accepted purpose of criminal forfeiture,

*i.e.,* to deprive offenders of their ill-gotten fruits and to deter future criminal conduct

by removing the instrumentalities of the crime. See e.g. *United States*

*v. Newman*, 659 F.3d 1235, 1243 (9th Cir. 2011) (stating that criminal forfeiture is

a means of disgorging a criminal defendant of his "ill-gotten gains"); *United States*

*v. Venturella*, 585 F.3d 1013, 1019 (7th Cir. 2009) ("forfeiture seeks to punish a

---

[12] *Compare* 18 U.S.C. § 2254 (1998) (civil forfeiture), *with* 18 U.S.C. § 2253 (1998)
(criminal forfeiture).  Both code sections provide for the forfeiture of "any visual
depiction described in section 2251, 2251A, or 2252 of this chapter, or any book,
magazine, periodical, film, videotape, or other matter which contains any such visual
depiction[.]"

defendant for his ill-gotten gains by transferring those gains ... to the United States Department of Justice") (citation omitted); *United States v. Hoover–Hankerson*, 511 F.3d 164, 171 (D.C. Cir. 2007) ("Forfeiture is a means of forcing a criminal defendant to disgorge ill-gotten profits.").

Here, the blanket forfeiture of Sanders's legally possessed, non-contraband files does not serve Congress' stated purpose of deterring criminal conduct and transferring ill-gotten gains out of the hands of offenders or reducing the circulation of child pornography.

### D. The forfeiture order was plainly excessive under the Eighth Amendment.

To succeed under plain-error review, Sanders bears the burden to show that (1) an error occurred; (2) the error was plain; and (3) the error affected his substantial rights. *United States v. Olano*, 507 U.S. 725, 732 (1993); *United States v. Knight*, 606 F.3d 171, 177 (4th Cir. 2010). If these three prongs are met, then this Court may choose to exercise its discretion to correct the error if it "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Olano*, 507 U.S. at 732.

As argued above, the district court committed error in ordering the wholesale forfeiture of Sanders's electronic devices, including their entire contents, without first conducting the necessary proportionality test mandated under the Excessive Fines Clause.

### 1. *The district court's error in ordering the forfeiture of Sanders's non-contraband files was plain.*

An error is "plain" within the meaning of Fed. R. Crim. Pro 52(b) as long as it was plain at the time of appellate review. *See Henderson v. United States*, 568 U.S. 266, 273-75 (2013). The rule covers three factual scenarios, where "(1) trial court decisions [] were plainly correct at the time when the judge made the decision [but later ruled infirm by a subsequent binding authority] [], (2) trial court decisions that were plainly [incorrect] at the time when the [trial] judge made the decision, [and] [] (3) cases in the middle—i.e., where the law at the time of the trial judge's decision was neither clearly correct nor incorrect, but unsettled[.]" *Id*., at 274.

As such, for a defendant to prevail on appeal, he must show that the settled law of the Supreme Court or this Circuit establishes the lower court's error. *See United States v. Brack*, 651 F.3d 388, 392 (4th Cir. 2011). Settled Supreme Court and Fourth Circuit law required the district court to engage in an Eighth Amendment proportionality review when ordering the forfeiture of property, and failure to do so is plain error.

In *Austin v. United States*, 509 U.S. 602 (1993), the government sought *in rem* civil forfeiture of supposed "guilty property"—namely, a mobile home and an autobody shop—which was used during various drug offenses. *Id*. at 604-05. The government attempted to categorize the entire class of *in rem* civil forfeitures as remedial rather than punitive, and therefore exempt from the Eighth Amendment's

Excessive Fines scrutiny. *Id*. at 606-607. In rejecting the government's argument, the Supreme Court explained that because the forfeiture "constitute[d] payment to a sovereign as punishment for some offense,[]…[it] is subject to the limitations of the Eighth Amendment's Excessive Fines Clause." *Id*. at 622. Importantly, the Court further held that "[t]he Excessive Fines Clause limits the government's power to extract payments, whether in cash *or in kind*, as punishment for some offense." *Id*. at 609-10 (emphasis added).

In *Alexander v. United States*, 509 U.S. 544 (1993), the jury convicted the defendant of RICO violations for trafficking in obscenity and the government sought forfeiture of numerous assets including the "proceeds [he] obtained from his racketeering offenses." *Id.* at 547, 548. In upholding the district court's forfeiture order, the Eighth Circuit held that the Eighth Amendment does not require any proportionality review of a sentence less than life imprisonment without the possibility of parole. *Id*. 558. Rejecting that blanket rationale, the Supreme Court concluded that the forfeiture was "clearly a form of monetary punishment no different, for Eighth Amendment purposes, from a traditional 'fine,'" and so subject to analysis under the Excessive Fines Clause. *Id*. at 558-59.

In *United States v. Bajakajian*, 524 U.S. 321 (1998) the defendant failed to report $357,144 that he attempted to carry out of the country in violation of federal law. *Id.* at 325. The government sought forfeiture of the entire $357,144 as part of

42

Bajakajian's criminal sentence. In affirming the lower courts' rulings, forfeiting only a small portion of what the government sought, the Supreme Court held that the forfeiture of Bajakajian's currency constitutes punishment and is thus a "fine" within the meaning of the Excessive Fines Clause, subject to the principles of proportionality. *Id*. at 334

Finally, in *United States v. Jalaram, Inc*., 599 F.3d 347 (4th Cir. 2010), this Court rejected the government's argument that the forfeiture at issue—an *in personam* criminal forfeiture of proceeds—by definition could never be punitive and therefore is never subject to examination under the Supreme Court's proportionality analysis:

> In *Austin*, *Alexander*, and *Bajakajian*, every member of the Supreme Court agreed, over the Government's objections, that the challenged forfeitures constituted punishment subject to proportionality analysis under the Excessive Fines Clause. In each case, the Government argued that forfeiture of a certain type of property—whether the civil forfeiture of guilty property in *Austin*, the criminal forfeiture of racketeering proceeds in *Alexander*, or the criminal forfeiture of instrumentalities in *Bajakajian*—merited a special exception from the Excessive Fines Clause. In each case, the Court rejected the Government's view.

*Id*. at 354.

Firmly rooted Supreme Court and Fourth Circuit precedent make plain that the district court erred in failing to conduct the required proportionality determination in entering the preliminary order of forfeiture.

43

## 2. *The district court's error affected Sanders's substantial rights.*

To demonstrate that an error affected a defendant's substantial rights, he must show a reasonable probability that, but for the error, the outcome of the proceeding would have been different. *Molina-Martinez*, 578 U.S. at 194. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *United States v. Marcus*, 560 U.S. 258, 262 (2010); *United States v. Olano*, 507 U.S. 725, 734–735 (1993) (to satisfy the third criterion of Rule 52(b), a defendant must "normally" demonstrate that the alleged error was not "harmless"); see also *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004) ("defendant must thus satisfy the reviewing court, informed by the entire record, that the probability of a different result is 'sufficient to undermine confidence in the outcome' of the proceeding."). Thus, on plain error review, a defendant must establish that the error was prejudicial, or more specifically, that it affected the outcome of the district court proceedings. *Olano*, 507 U.S. at 734; *United States v. Hastings*, 134 F.3d 235, 240 (4th Cir.1998).

Here, the district court held that § 2253(a) "require[d] forfeiture of the electronic devices in their entirety[.]" JA231. Because this reading of the statute is incorrect, there is more than a reasonable probability that had the district court applied the Supreme Court's proportionality test, it would have concluded that the forfeiture violated the Eighth Amendment's Excessive Fines Clause.

44

Nowhere in the district court's memorandum opinion does the court consider the personal nature of the files at issue apart from its passing reference blaming Sanders for his decision to commingle family photographs and business records with images of child pornography. JA233. Indeed, it appears that the district court mistakenly assumed that consideration of the nature of the property sought to be forfeited would amount to a purely equitable consideration, a concern it erroneously concluded was not permitted by *United States v. Blackman*, 746 F.3d 137 (4th Cir. 2017), in cases involving forfeiture under 18 U.S.C. § 2553. JA231. Nor did the district court undertake a balancing of the relative harm caused in this case against the forfeiture of a lifetime of non-contraband personal files.

Simply put, a correctly conducted forfeiture hearing would have led to a different result.

### 3. *The failure to correct the district court's error would seriously affect the fairness, integrity or public reputation of judicial proceedings or result in a miscarriage of justice.*

Because plain error review is discretionary, the Court will only exercise its discretion to recognize a plain error if the defendant shows that the error affecting his substantial rights also "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings," or results in a miscarriage of justice. *United States v. Olano*, 507 U.S. at 736, (quoting *United States v. Young*, 470 U.S. 1, 15 (1985)); *United States v. Simmons*, 999 F.3d 199, 221 (4th Cir. 2021).

The files at issue chronicle "the privacies of [Sanders'] life[.]" *Riley*, 573 U.S. at 403.  Many people store every aspect of their lives on electronic devices.  Losing those devices can result in "the only record for years of a person's life [being] lost in an instant." *United States v. Gladding*, 775 F.3d 1149, 1150 (9th Cir. 2014).  This is precisely what the district court accomplished by ordering the blanket forfeiture of Sanders's electronic devices without engaging in the requisite constitutional analysis.

Given the importance of protecting records of the nature protected in *Riley*, this Court should exercise its discretion to vacate Sanders's preliminary order of forfeiture and order the files returned.  Alternatively, the Court should vacate and remand the matter to the district court to conduct a proper Eighth Amendment inquiry.  Failure to correct this error will result in both a miscarriage of justice and seriously affect the fairness of the judicial proceeding.

**E. Any inconvenience to the government is not relevant.**

"The law contains no 'inconvenience exception' to the proposition that seized property should be returned to its lawful owner in the absence of a continuing Government interest." *Wiebe v. Nat'l Sec. Agency*, 2012 WL 4069746, at *8 (D. Md. Sept. 14, 2012).  To the extent that the district court's forfeiture order was based on its view of the unwarranted and substantial burden on government resources it

believed returning Sanders's non-contraband files would have, JA232, this Court should dismiss those concerns as irrelevant.

The district court accepted the prosecution's assertions that it would be burdensome for the government to identify non-contraband files and either remove them from the hard drive or provide Sanders with copies, and "that the task of separating contraband from non-contraband files is more complicated than merely separating pornographic images from non-pornographic ones." JA232.   However, this Court in *United States v. Blackman*, 746 F.3d 137 (4th Cir. 2017), held that in the context of forfeiture proceedings, equitable considerations do not play a role in a court's decision-making process. *Id*. at 143.  More importantly, however, it stands to reason that the burden of returning property that cannot be legally forfeited should never be relevant to the underlying inquiry of whether the property is subject to forfeiture to begin with.

Regardless, any actual burden on the government in returning copies of non-forfeitable property can be assuaged.  Sanders offered to bear the costs of hiring a forensic expert to segregate and copy non-contraband files he seeks to have returned. Sanders further offered to compensate the FBI for the resources it would expend reviewing the files his expert selected in response to the district court's concern that "an FBI technician would still be required to review the files and determine which were contraband and which were not contraband." JA232.

47

In response, the government submitted a declaration by one of its agents that incorrectly described the "Griffeye" technology used by law enforcement to identify and categorize child pornography images. The declaration claimed that "Griffeye relies on "known hash sets" and that "uncategorized" images would still require a manual review by an FBI examiner. JA108. According to Griffeye's own website, Griffeye relies on artificial intelligence, not known hash values, to classify images it believes depicts child abuse content. JA173.[13] The case agent also confirmed to the defense team during pretrial discovery sessions that Griffeye had processed the material on Sanders's devices using artificial intelligence, and not based on known hash values. JA141.

At bottom, Sanders asks no more of the government than what has already been done in his case and has been approved in at least one other case outside this Circuit. See, e.g., *United States v. Gladding*, 775 F.3d 1149, 1154 (9th Cir. 2014) (noting that "[t]he district court may also order alternative measures for returning Gladding's noncontraband files other than forcing the government to pay for the segregating the data itself… For example, … require[ing] Gladding to pay the costs

---

[13] Griffeye's own website states: "[t]he AI scans through previously unseen footage and suggests images that it believes depicts child sexual abuse content. The AI outputs a score that can be used to tell whether a file is pertinent to the investigation or not." JA174.

of segregation by having his expert review the electronic storage devices and copy the noncontraband files to the extent otherwise permitted by law.").[14]

## CONCLUSION

For the reasons stated, the preliminary order of forfeiture entered by the district court forfeiting Sanders's legally possessed, non-contraband files should be vacated and the non-contraband files ordered returned. Alternatively, the preliminary order of forfeiture should be vacated and the matter remanded for a new hearing in accordance with the requirements stated above.

## STATEMENT REGARDING ORAL ARGUMENT

Under Federal Rule of Appellate Procedure 34(a) and Fourth Circuit Rule 34(a), Sanders respectfully requests that the Court hold oral argument in this appeal. In light of the number of issues that have been raised in the instant appeal, Sanders submits that oral argument would aid the Court in its decisional process.

Respectfully submitted,

/s/ Nina J. Ginsberg
Nina J. Ginsberg
DIMUROGINSBERG, PC
1101 King Street, Suite 610
Alexandria, Virginia 22314
(703) 684-4333

*Counsel for Appellant*

---

[14] In *Gladding*, the government voluntarily provided the defendant with copies of some but not all of the files he requested. 775 F.3d at 1151.

## <u>CERTIFICATE OF COMPLIANCE</u>

1.  This brief complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

    [ X ] this brief contains [*11,776*] words.

    [    ] this brief uses a monospaced type and contains [*state the number of*] lines of text.

2.  This brief complies with the typeface and type style requirements because:

    [ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 365*] in [*14pt Times New Roman*]; *or*

    [    ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: <u>January 13, 2023</u>            <u>/s/ Nina J. Ginsberg</u>
                                          *Counsel for Appellant*

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that on this 13th day of January, 2023, I caused this Brief of

Appellant and Joint Appendix to be filed electronically with the Clerk of the Court

using the CM/ECF System, which will send notice of such filing to the following

registered CM/ECF users:

> Annie Z. Zanobini
> OFFICE OF THE U.S. ATTORNEY
> 2100 Jamison Avenue
> Alexandria, Virginia 22314
> (703) 299-3700
>
> *Counsel for Appellee*

I further certify that on this 13th day of January, 2023, I caused a copy of the

Sealed Volume of the Joint Appendix to be served, via FedEx, upon counsel for

the Appellee, at the above address.

/s/ Nina J. Ginsberg         
*Counsel for Appellant*
