IN THE
UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

No. 22-7054

———————————

UNITED STATES OF AMERICA,

*Appellee*,

v.

ZACKARY ELLIS SANDERS,

*Appellant*.

———————————

Appeal from the United States District Court
for the Eastern District of Virginia
at Alexandria
*The Honorable T.S. Ellis III, District Judge*

———————————

BRIEF OF THE UNITED STATES

———————————

Jessica D. Aber
United States Attorney


William Clayman
Trial Attorney

Annie Zanobini
Seth Schlessinger
Aidan Taft Grano-Mickelsen
Assistant United States Attorneys
2100 Jamieson Avenue
Alexandria, Virginia 22314
(703) 299-3700


*Attorneys for the United States of America*

## Table of Contents

**Page**

Table of Authorities ................................................................................ iii

Introduction ............................................................................................. 1

Issues Presented ...................................................................................... 2

Statement of the Case .............................................................................. 3

Summary of Argument ............................................................................. 8

Argument .................................................................................................. 9

I.    The district court properly granted the government's motion for a preliminary order of forfeiture ............................................................. 9

      A.    The bulk of Sanders' claims are waived or, at minimum, forfeited and subject to plain error. .................................... 10

      B.    The plain text of § 2253(a)(1) and (a)(3) requires the forfeiture of electronic devices in their entirety. ................................... 14

            1.    Non-contraband files on a device used to commit child exploitation are not "separate property." ...................... 18

            2.    Alternately, the devices and their contents are "other matter" containing contraband under § 2253(a)(1). ................................. 34

II.    Alternatively, the district court had ample discretion under Rule 41(g) to deny the return of non-contraband material held on forfeited devices. .............................................................................. 42

III.    The forfeiture of defendant's devices and their content is not plainly erroneous under the Eighth Amendment. ................................... 46

Conclusion .............................................................................................. 55

i

Statement Regarding Oral Argument ........................................................56

Certificate of Compliance .........................................................................56

# Table of Authorities

Page

## Cases

*Alexander v. United States*,
509 U.S. 544 (1993)...................................................................47

*America Online, Inc. v. St. Paul Mercury Ins. Co.*,
347 F.3d 89 (4th Cir. 2003) ......................................................20

*Austin v. United States*,
509 U.S. 602 (1993)...................................................................47

*Babb v. U.S. Drug Enf. Agency*,
146 F. App'x 614 (4th Cir. 2005) ..............................................42

*Brown v. United States*,
692 F.3d 550 (6th Cir. 2012) .....................................................42

*De Almedia v. United States*,
459 F.3d 377 (2d Cir. 2006) ......................................................42

*Eriline Co. S.A. v. Johnson*,
440 F.3d 648 (4th Cir. 2007) .....................................................49

*Foster v. Univ. of Md.- East. Shore*,
787 F.3d 243 (4th Cir. 2015) .....................................................13

*Greenlaw v. United States*,
554 U.S. 237 (2008)...................................................................48

*Henderson v. United States*,
575 U.S. 622 (2015)...................................................................43

*In re Grand Jury Subpoena*,
846 F. Supp. 11 (S.D.N.Y. 1994) ..............................................30

*In re Horowitz*,
482 F.2d 72 (2d Cir. 1973) ........................................................30

*Keystone Driller Co. v. Gen. Excavator Co.*,
    290 U.S. 240 (1933)............................................................................45

*Maryland v. Garrison*,
    480 U.S. 79 (1987)..............................................................................32

*Matter of Search of One Address in Washington, D.C., Under Rule 41*,
    512 F. Supp. 3d 23 (D.D.C. 2021)....................................................24

*Nat'l Ass'n of Mfrs. v. Dep't of Def.*,
    138 S. Ct. 617 (2018).........................................................................15

*New York v. Ferber*,
    458 U.S. 747 (1982)............................................................................52

*Perrin v. United States*,
    444 U.S. 37 (1979)..............................................................................15

*Russello v. United States*,
    464 U.S. 16 (1983)................................................................ 16-17, 40

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
    464 U.S. 417 (1984)............................................................................37

*State v. Kremer*,
    907 N.W.2d 403 (N.D. 2018) ...........................................................26

*State v. Mansour*,
    421 P.3d 323 (Ore. 2018) ..................................................................20

*Taylor v. Grubbs*,
    930 F.3d 611 (4th Cir. 2019) ............................................................15

*The Dolphin v. United States*,
    3 F.2d 1 (1st Cir. 1925)......................................................................29

*Trulock v. Freeh*,
    275 F.3d 391 (4th Cir. 2001) ............................................................30

*United States v. 7046 Park Vista Rd.*,
    537 F. Supp. 2d 929 (S.D. Ohio 2008).............................................53

iv

*United States v. Ahmad*,

    213 F.3d 805 (4th Cir. 2000) ................................................................ 48, 51

*United States v. Al-Hamdi*,

    356 F.3d 564, (4th Cir. 2004) ............................................................. 13-14

*United States v. Bajakajian*,

    524 U.S. 321 (1998).......................................................... 47, 49, 51, 54

*United States v. Bernard*,

    537 F. App'x 72 (3d Cir. 2013) .....................................................42

*United States v. Blackman*,

    746 F.3d 137 (4th Cir. 2014 .................................... 16, 40, 49, 51

*United States v. Burgess*,

    684 F.3d 445 (4th Cir. 2012) ......................................................53

*United States v. Carthorne*,

    726 F.3d 503 (4th Cir. 2013) ......................................................46

*United States v. Castello*,

    611 F.3d 116 (2d Cir. 2010) ......................................................52

*United States v. Chambers*,

    192 F.3d 374 (3d Cir. 1999) ......................................................42

*United States v. Comprehensive Drug Testing, Inc.*,

    579 F.3d 989 (9th Cir. 2009) ......................................................31

*United States v. David*,

    756 F. Supp. 1385 (D. Nev. 1991) ...............................................30

*United States v. Davis*,

    736 F. App'x 783 (11th Cir. 2020)................................................43

*United States v. Debbi*,

    244 F. Supp. 2d 235 (S.D.N.Y 2003) ...........................................31

*United States v. Evers*,

    669 F.3d 645 (6th Cir. 2012) ......................................................18

*United States v. Fellows*,

 157 F.3d 1197 (9th Cir. 1998) ....................................................................39

*United States v. Fifer*,

 863 F.3d 759 (7th Cir. 2017) ......................................................................32

*United States v. Ganias*,

 824 F.3d 199 (2d Cir. 2016) ........................................................................19

*United States v. Hall*,

 142 F.3d 988 (7th Cir. 1998) ......................................................................39

*United States v. Hastings*,

 134 F.3d 235 (4th Cir. 1998) ......................................................................49

*United States v. Hoffman*,

 764 F. App'x 399 (4th Cir. 2019) ......................................................... 26, 29

*United States v. Hoffman*,

 No. 2:12-cr-184, 2018 WL 5973763 (E.D. Va. Nov. 14, 2018) ..................25

*United States v. Holland*,

 722 F. App'x 919 (11th Cir. 2018) ..............................................................52

*United States v. Howell*,

 425 F.3d 971 (11th Cir. 2005) ............................................................. 42, 44

*United States v. Hull*,

 606 F.3d 524 (8th Cir. 2010) ............................................................... 26, 52

*United States v. Ivey*,

 — F.4th — , 2022 WL 1982384, at *11 (4th Cir. Feb. 14, 2023)........... 10-11

*United States v. Jalaram, Inc.*,

 599 F.3d 347 (4th Cir. 2010) ......................................... 16, 24, 47, 49, 51, 52

*United States v. Kaczynski*,

 551 F.3d 1120 (9th Cir. 2009) ....................................................................44

*United States v. Lacy*,

 119 F.3d 742 (9th Cir. 1997) ............................................................... 36, 39

*United States v. Martin*,

    662 F.3d 301 (4th Cir. 2011) ...................................................9

*United States v. Massenburg*,

    564 F.3d 337 (4th Cir. 2009) ................................................46

*United States v. Metter*,

    860 F. Supp 2d 205 (E.D.N.Y. 2012) ....................................31

*United States v. Mitchell*,

    324 F. App'x 264 (4th Cir. 2009) .........................................42

*United States v. Monsanto*,

    491 U.S. 600 (1989) .............................................................16

*United States v. Morehouse*,

    34 F.4th 381 (4th Cir. 2022) ........................................ 11, 13

*United States v. Morgan*,

    224 F.3d 339 (4th Cir. 2000) .................................................9

*United States v. Noyes*,

    557 F. App'x 125 (3d Cir. 2014) ..........................................26

*United States v. Olano*,

    507 U.S. 725 (1993) ..................................................... 10, 46

*United States v. One 1998 Tractor*,

    288 F. Supp 2d 710 (W.D. Va. 2003) ...................................29

*United States v. Reynolds*,

    856 F.2d 675 (4th Cir. 1988) ................................................28

*United States v. Rivera*,

    884 F.2d 544 (11th Cir. 1989) ..............................................17

*United States v. Robinson*,

    744 F.3d 293 (4th Cir. 2014) ........................................ 10, 13

*United States v. Roca*,

    676 F. App'x 194 (4th Cir. 2017) .........................................42

*United States v. Rodriguez*,

    311 F.3d 435 (1st Cir. 2002)..........................................................................10

*United States v. Ross*,

    456 U.S. 798 (1982)..........................................................................32

*United States v. Rudisill*,

    358 F. App'x. 421 (4th Cir. 2009) .................................................43

*United States v. Sanders*,

    No. 22-4242 (4th Cir.) ............................................................ 5, 45

*United States v. Santoro*,

    866 F.2d 1538 (4th Cir. 1989 ....................................... 27-29. 32

*United States v. Saunders*,

    957 F.2d 1488 (8th Cir. 1992) .......................................................45

*United States v. Schesso*,

    730 F,3d 1040 (9th Cir. 2013) ......................................................32

*United States v. Schifferli*,

    895 F.3d 987 (4th Cir. 1990) .......................................................24

*United States v. Serafini*,

    826 F.3d 146 (4th Cir. 2016) .......................................................15

*United States v. Shimshiryan*,

    114 F. App'x 863 (4th Cir. 2004).................................................29

*United States v. Sineneng-Smith*,

    140 S. Ct. 1575 (2020)..................................................................48

*United States v. Smith*,

    966 F.2d 1045 (6th Cir. 1992) ............................................... 28-29

*United States v. Soza*,

    599 F. App'x 69 (4th Cir. 2015)...................................................42

*United States v. Stevenson*,

    396 F.3d 538 (4th Cir. 2005) .......................................................31

*United States v. Tamura*,

    964 F.2d 591 (9th Cir. 1982) .................................................................31

*United States v. Van Cauwenberghe*,

    934 F.2d 1048 (9th Cir. 1991) ...........................................................43

*United States v. Vig*,

    167 F.3d 443 (8th Cir. 1999) ............................................................ 38-39

*United States v. Vonn*,

    535 U.S. 55 (2002)..............................................................................46

*United States v. Wallace*,

    515 F.3d 327 (4th Cir. 2008) ..........................................................46

*United States v. Wernick*,

    148 F. Supp. 3d 271 (E.D.N.Y. 2015)............................................27

*United States v. Wernick*,

    673 F. App'x 21 (2d Cir. 2016)...................................... 24, 28, 43

*United States v. Williams*,

    592 F.3d 511 (4th Cir. 2010) ...........................................................33

*United States v. Wilk*,

    2007 WL 2263942 ..............................................................................54

*United States v. Zaleski*,

    686 F.3d 90 (2d Cir. 2012) ...............................................................42

*Williams v. Apple, Inc.*,

    449 F. Supp. 3d 892 (N.D. Cal. 2020)...........................................50

*Yates v. United States*,

    574 U.S. 528 (2015)....................................................................... 35, 36

*Young v. United States*,

    489 F.3d 313 (7th Cir. 2007) ...........................................................42

**Statutes**

15 United States Code, Section 1471 .......................................................................35

18, United States Code, Section 794 .......................................................................25

18, United States Code, Section 794(d) ............................................................ 25, 26

18, United States Code, Section 1715 .......................................................................35

18, United States Code, Section 1716 .......................................................................35

18, United States Code, Section 1983 .......................................................................17

18, United States Code, Section 2251 .......................................................................15

18, United States Code, Section 2251A .......................................................................15

18, United States Code, Section 2251(a), (e) .......................................................................5

18, United States Code, Section 2252 ............................................................ 15, 39

18, United States Code, Section 2252(a) ............................................................ 35, 38

18, United States Code, Section 2252(a)(2), (b)(1) .......................................................................5

18, United States Code, Section 2252(a)(4) .......................................................................37

18, United States Code, Section 2252(a)(4)(B) .......................................................................38

18, United States Code, Section 2252(a)(4)(B), (b)(2) .......................................................................5

18, United States Code, Section 2252A ............................................................ 15, 38

18, United States Code, Section 2252B .......................................................................15

18, United States Code, Section 2253 .................................... 1, 2, 5, 7, 14, 16, 34, 36

18, United States Code, Section 2253(a) ............................................. 8, 16, 25, 27, 30

18, United States Code, Section 2253(a)(1) ......................... 8, 17, 34, 37, 38, 40, 41

18, United States Code, Section 2253(a)(1) and (a)(3) ................................ 7, 14, 41

18, United States Code, Section 2253(a)(3) .............. 8, 17, 18, 20, 23, 24, 26, 30-32

18, United States Code, Section 2253(b) ....................................... 16, 24, 35, 39, 40

18, United States Code, Section 2256 .......................................................................38

18, United States Code, Section 2256(5) .......................................................................38

18, United States Code, Section 2260 .......................................................................15

18, United States Code, Section 2461(c) .......................................................................16

18, United States Code, Section 3509 .......................................................................24

18, United States Code, Section 3771 ...................................................24

21, United States Code, Section 853 .....................................................16

21, United States Code, Section 853(b) .................................................23

21, United States Code, Section 853(a) and (b)(1) ...............................28

21, United States Code, Section 853(b)(1)–(2) .....................................28

21, United States Code, Section 853(*o*) ................................. 16, 17, 24, 35, 39, 40

39, United States Code, Section 3001 ...................................................35

39, United States Code, Section 3001(a), (f), (g) .................................35

49 United States Code, Section 80303 ..................................................29

## Other Authorities

*Computer Forensics, Search Strategies & the Particularity Requirement*, 7 U. Pitt. J. Tech. L. & Pol'y 2, art. 5, at 7 (2007) ................19

Fourth Amendment ........................................................... 19, 30-33

Pub. L. 100-690, sec. 7522(c), 102 Stat. 4181, 4494 (Nov. 18, 1988) ...................37

Pub. L. 104-208, sec. 121(2), 110 Stat. 3009, 3009-027 (Sept. 30, 1996) .................................................................................38

Pub. L. 104-208, sec. 121(3), 110 Stat. at 3009-028 to 3009-029 .........................38

*The Physical Computer & The Fourth Amendment*, 16 Berkeley J. Crim. L. 112, 155 (2011) ....................................................18

U.S. Constitution, amend. IV .................................................................32

## Rules

Federal Rules of Criminal Procedure, Section 17(c) ..............................30

Federal Rules of Criminal Procedure, Section 41 .......................... 8, 25, 28, 32, 43

Federal Rules of Criminal Procedure, Section 41 (e)(2)(A) ....................32

Federal Rules of Criminal Procedure, Section 41(e)(2)(B) .....................33

Federal Rules of Criminal Procedure, Section. 41(f)(1)(B) .....................33

Federal Rules of Criminal Procedure, Section 41(g) ........................... 2, 5, 6, 42, 43

Federal Rules of Criminal Procedure, Section 51(b) ..............................48

**Introduction**

Following the jury's conviction of defendant Zackary Sanders on twelve counts of producing, receiving, and possessing child sexual abuse material, the government sought forfeiture of nine electronic devices defendant used to commit his offenses. Defendant did not challenge the forfeiture of the devices themselves but argued that the district court should order the government to return certain categories of non-contraband electronic data stored on three of those devices.

The district court rejected this argument, finding that two independent provisions of the child pornography forfeiture statute, 18 U.S.C. § 2253, required forfeiture of the devices in their entirety, including the electronic data stored on them. In addition, the court concluded that to the extent the equities of the situation were relevant, they strongly supported denying defendant's request because of the significant burden on the government to review and disentangle forfeited files from non-forfeited files and to ensure the government returned only legal, non-objectionable material to defendant. The court also noted that the commingling of defendant's personal data with his illegal conduct was a product of defendant's own choices and thus weighed against his arguments.

Those conclusions are sound. As every court to have reached the issue has held, § 2253 mandates the forfeiture of an electronic storage device in its entirety, including non-contraband data it contains. Electronic data is stored on devices as

1

through physical properties of the device itself; data present on a storage device is therefore not "separate property," as defendant contends. Independently, electronic storage devices are "other matter" containing prohibited visual depictions, within the meaning of a separate provision, and the statute clearly contemplates the forfeiture of non-offending material also contained within such matters. Even were defendant correct as to mandatory forfeiture, however, the district court had equitable authority under Rule 41(g) to deny the return of non-contraband property validly seized on the devices.

Lastly, defendant failed to raise any Eighth Amendment challenge below and concedes his claim is subject to plain-error review. He cannot meet his burden to prove any of those elements, however. The district court's forfeiture order should be affirmed.

## Issues Presented

1.      Did the district court err by concluding that 18 U.S.C. § 2253 requires forfeiture of the entirety of defendant's electronic devices, including their contents?

2.      Did the district court abuse its discretion in denying Sanders's Rule 41(g) motion for the return of non-contraband files stored on the forfeited devices?

3.      Did the district court commit plain error by failing to conduct, *sua sponte*, an Eighth Amendment proportionality analysis of the forfeiture?

**Statement of the Case**

In August 2019, the FBI received information that a specific IP address was used to access child sexual abuse and exploitation material on or about May 23, 2019, on a hidden service on The Onion Router (Tor) network dedicated to such content. JA81, JA243. That IP address was registered through Cox Communications to Sanders's mother at an address in McLean, Virginia. JA81, JA243. Sanders also resided at that address at the time. JA81, JA243.

On February 12, 2020, the FBI executed a search warrant at Sanders's residence and seized a number of electronic devices, including all of the devices the government now seeks to forfeit. JA81, 243. During the search, Sanders admitted to accessing and receiving child pornography through websites on the Tor network. JA81, JA243. Sanders also stated that he transferred child pornography material that he downloaded over the Internet from his laptop to external media storage devices. JA81, JA244.

A forensic examination of the seized devices revealed that Sanders used the various devices seized from his home to communicate with minors and to produce and receive child pornography depicting these minors. JA81, JA244. Specifically, the examination revealed that between approximately 2017 and approximately 2020, Sanders engaged in sexually explicit communications over the Internet, including the production and receipt of child pornography, with at least five minor

boys who were between the ages of 13 and 17 years old, and that he received child pornography depicting a sixth minor boy in the same timeframe. JA81-82, JA245. This included having victims record and send him videos of themselves engaged in sexualized conduct like slapping their testicles while nude. JA2, JA251. Sanders used electronic devices to communicate with the minors via Kik Messenger, Telegram, online forums, iMessage application, and the dating application Grindr. JA82, JA244-245, JA248. Furthermore, the forensic review of the electronic devices seized from Sanders's residence revealed approximately hundreds of images and videos depicting child pornography/exploitation material. JA82, JA254-255.

During trial, two witnesses testified establishing the nexus between the electronic devices and the alleged offenses. JA82. Special Agent Laura Calvillo testified that a number of electronic devices were found and seized from Sanders's bedroom during the search of his home. JA82. Special Agent Christopher Ford testified that he imaged several and examined the contents of all of the relevant electronic devices found at Sanders' residence and that each of the devices contained images and video of child pornography, including videos admitted into evidence. JA82. Special Agent Ford testified as to how Sanders used specific devices to chat online with minors, and how he used them to produce and receive child pornography material depicting different minors. JA82.

In October of 2021, a jury convicted Sanders of five counts of production of child pornography (18 U.S.C. § 2251(a), (e)), six counts of receipt of child pornography (18 U.S.C. § 2252(a)(2), (b)(1)), and one count of possession of child pornography (18 U.S.C. § 2252(a)(4)(B), (b)(2)).[1] JA49, JA64-69, JA242. Before sentencing, Sanders filed a Rule 41(g) motion, and the government filed a motion for a preliminary order of forfeiture looking to forfeit nine electronic devices containing child pornography. JA57, JA70-98. The government's motion included two declarations from FBI special agents. JA99-108. The first declaration, prepared by Special Agent Emily Eckert, stated that all nine electronic devices that the government sought to forfeit contained child pornography. JA99-103. The second declaration, prepared by Special Agent Andrew Kochy, discussed the substantial burden that would be placed on the government if it were required to separate the non-contraband files from the contraband files contained on the electronic devices and highlighted specific instances in this case in which the defense was unable to successfully disentangle Sanders's child-pornography from his non-contraband material on his devices while reviewing this evidence at the FBI. JA104-108. The government argued that the forfeiture statute at issue, 18 U.S.C. § 2253, required the forfeiture of the electronic devices in their entirety to

---

[1] Defendant has separately appealed his convictions. *See United States v. Sanders*, No. 22-4242 (4th Cir., briefing concluded Aug. 22, 2022).

include all hardware, software, and data on the devices. JA80-98. Sanders argued that the non-contraband files on the electronic devices were not subject to forfeiture under the statute, and therefore should be returned. JA70-79.

On April 29, 2022, the district court held a hearing to address the two motions. JA61, JA177. At the hearing, the district court confirmed that only three devices were at issue. JA182, JA184-187. In Sanders's briefs and during oral argument, Sanders clarified that he only sought the return of non-contraband material on three electronic devices; specifically: (1) 1B2 a HP Elite Book laptop with cord; (2) 1B19 an Apple iPad Pro, S/N DMPVGGCPHDDV; and (3) 1B27 an apple iPhone S/N C39VJ0XDJCL6. JA122, JA124, JA137-138, JA179-180, JA182, JA187, JA195-196; SA3, SA9, SA10. He further stated that he was not challenging the forfeitability of the devices; rather, he argued the non-contraband files were not forfeitable and ought to be returned. JA70, JA72, JA114, JA119, JA121, JA136-137, JA179, JA185-187; SA4, SA10.

On August 8, 2022, the district court issued an order granting the United States' motion for a preliminary order of forfeiture and forfeited the nine devices in their entirety. JA62, JA221-234. The district court order also denied Sanders's Rule 41(g) motion. JA62, JA221-234. In the order, the district court held that "[t]rial testimony and admitted evidence establishes that all of these [nine] electronic devices contained child pornography and were used by Defendant in the

commission of the offenses of conviction." JA223. The district court noted that

"[d]efendant does not contest that all nine electronic devices are subject to

forfeiture." JA223. Rather, the court stated, "the parties agree that the nine

electronic devices are subject to mandatory forfeiture under § 2253, [but] the

parties disagree about whether § 2253 applies to non-contraband files stored on

those devices." JA223.

The district court concluded that the devices constituted both "other matter"

containing prohibited visual depictions and property used to commit defendant's

offenses, mandating forfeiture under § 2253(a)(1) and (a)(3) respectively. JA228.

In concluding that this forfeiture encompassed non-contraband data stored on the

devices, the district court noted, "nowhere does the statute provide that only some

portion of the property containing child pornography should be subject to

forfeiture." JA226. The district court also observed that even if it were to consider

equitable considerations, those considerations ruled in favor of requiring the

forfeiture of the devices in their entirety. JA232. First, the court found, the return

of non-contraband files would impose an unwarranted and substantial burden on

limited government resources. JA232. Second, the district court concluded that the

burden was a result of Sanders's own conduct, as it was Sanders who commingled

his child pornography with non-child-pornography material. JA232.

This appeal followed.

## Summary of Argument

The plain text of two independent provisions of § 2253(a) require forfeiture of defendant's electronic devices, including the electronic data stored on them. First, § 2253(a)(3) requires forfeiture of property used to commit the offenses, which defendant did not dispute below. Defendant's argument that the electronic data constitutes "separate property" is erroneous as a matter of the technological realities of data storage and relies on analogies used in inapposite areas of law. Second, § 2253(a)(1) requires forfeiture of "other matter" that contains prohibited visual depictions. The plain language, particularly considered in light of Congress's explicit definition of "visual depictions" as including "data stored on a computer disk," demonstrates that storage devices are the correct unit of forfeiture, not individual files.

Moreover, even if forfeiture of the electronic data was not mandated by statute, the district court had equitable authority under Rule 41 to deny return based on the burden required to disentangle forfeited from non-covered data and defendant's own actions in commingling illegal and legal material on the same device.

Lastly, defendant's forfeited claim of Eighth Amendment disproportionality fails. Defendant has identified no authority, much less binding authority, directly

on point, and he cannot show either plain error or an effect on his substantial rights.

Accordingly, the Court should affirm the district court's forfeiture order.

## Argument

I.    **The district court properly granted the government's motion for a preliminary order of forfeiture.**

In criminal forfeiture proceedings, this Court "review[s] the district court's findings of fact for clear error and the district court's legal interpretations de novo." *United States v. Martin*, 662 F.3d 301, 306 (4th Cir. 2011) (citing *United States v. Morgan*, 224 F.3d 339, 342 (4th Cir. 2000)).

Below, Sanders requested the return of certain categories of non-contraband data on three electronic devices, which he conceded were used by him in the commission of his offenses. The district court denied this request on the basis of well-reasoned statutory interpretation and sound factual findings. On appeal, Sanders argues that the district court erred in not ordering the return of all non-contraband devices on all nine devices forfeited. In addition to this expanded set of arguments being affirmatively waived below, his arguments, even as preserved, are meritless.

**A.    The bulk of Sanders' claims are waived or, at minimum, forfeited and subject to plain error.**

In the district court, Sanders specifically informed the district court that he was not contesting the forfeitability of any of the electronic devices but rather only asking for the return of a small number of non-contraband files (not individually identified) on three specific devices: 1B2, 1B19, and 1B27. On appeal, however, Sanders both (a) seeks the return of all non-contraband files on all nine forfeited devices, including six he did not contest below: 1B1, 1B3, 1B5, 1B6, 1B22, and 1B24; and (b) alludes to doubts about the forfeitability of one of those six devices, 1B24. Because defendant affirmatively disclaimed these arguments below, he waived his claims of error and cannot present them on appeal.

The difference between forfeiture and waiver is whether defendant failed to make a timely objection or whether he intentionally disclaimed or withdrew a known argument. *See, e.g.*, *United States v. Olano*, 507 U.S. 725, 733 (1993). That distinction controls whether this Court may consider the issue at all under plain-error review or whether there is simply no "error" to correct. *Ibid.* "A waiver is the intentional relinquishment or abandonment of a known right." *United States v. Robinson*, 744 F.3d 293, 298 (4th Cir. 2014) (internal quotations and citations omitted). "A party who identifies an issue, and then explicitly withdraws it, has waived the issue." *Id.* at 298 (quoting *United States v. Rodriguez*, 311 F.3d 435, 437 (1st Cir. 2002)); *see also United States v. Ivey*, — F.4th — , 2022 WL

10

1982384, at *11 (4th Cir. Feb. 14, 2023) (holding that withdrawal of an expert prior to district court ruling on admissibility constituted waiver). "[W]hen a claim is waived—as opposed to forfeited—it is not reviewable on appeal, even for plain error." *United States v. Morehouse*, 34 F.4th 381, 395 (4th Cir. 2022).

In his initial motion, defendant requested an order "directing the United States to preserve and return copies of the non-contraband content of Mr. Sanders['] seized electronic devices" and objected to the preliminary order of forfeiture "of non-contraband, personal and business digital data stored on the electronic devices named in the Forfeiture Notice of the Indictment." JA70. In its response, the government identified nine specific forfeitable devices and argued that the statute mandated forfeiture of the devices in their entirety, including files contained thereon. JA80, JA86-96. In doing so, the government noted that "given the number of devices and the amount of data on each electronic device, the undertaking of separating contraband and noncontraband data would be costly and difficult," and even the protocol suggested by defendant would demand countless hours from law enforcement agencies to review the proposed returnable material. JA95-96.

Multiple times after that—in his reply brief, in response to direct questioning by the district court at the hearing, and in a supplemental memorandum—defendant expressly disclaimed the argument that he was challenging the

11

forfeitability of the devices themselves or that he was seeking anything other than the return of a small number of files from only *three* specific devices: 1B2, 1B19, and 1B27:

> Mr. Sanders is only asking for the return of certain types of non-contraband files from three of those devices, an iPhone, an iPad, and a laptop computer. … Mr. Sanders is not requesting the return of any contraband images and is not contesting forfeiture of the devices themselves (as opposed to the non-contraband contents).

SA4; *see also* SA9 ("What is left is only whether copying or transferring the limited universe of non-contraband files and data from the three devices … would be unduly burdensome"); JA122 (citing to "the total storage capacity of the three devices at issue"); JA136, JA141 (identifying only "personal/family photographs" and documents consisting of employment materials); JA179-180 (defense counsel identifying only 1B2, 1B19, and 1B27 at forfeiture hearing).

Nowhere in his brief on appeal does Sanders acknowledge that he told the district court that he was only seeking the return of certain limited categories of non-contraband files on three devices. Yet based on defendant's unequivocal response at the hearing, the district court clearly understood defendant to have limited his argument so:

> The Court: All right. So, Ms. Ginsberg, am I correct, then, that what we're focused on sharply today is whether, for 1B2 and 1B19 and 1B27, where there appears to be noncontraband material on there, whether the device should be forfeited both with and without the contraband

> material, or, as you argue, that the noncontraband portions
> of those memories should be returned to the defendant?
>
> Ms. Ginsberg: Essentially, yes, Your Honor.

JA187. The court then repeated this framing of the issue in its written order. *See*

JA225 (noting that defendant was seeking "the return of certain allegedly non-

contraband files—business records and family pictures—stored on the devices

designated as 1B2, 1B19, and 1B27"). Defendant made an intentional, strategic

choice to limit his arguments below to certain files on certain devices in order to

increase their perceived persuasiveness to the district court. He cannot now rescind

that choice on appeal. *See Morehouse*, 34 F.4th at 395 ("Having made a choice at

sentencing, Morehouse cannot now contend that the district court erred by

honoring that choice. He has waived the argument." (quoting *Robinson*, 744 F.3d

at 299)).

Additionally, defendant incudes in his opening brief a passing reference to

the forfeitability of one device—1B24, an Apple iPhone 4—albeit in footnotes. *See*

Def. Br. 3 n.2; *see also* Def. Br. 15 n.6 (suggesting that defendant conceded

forfeitability only as to "eight physical devices"). First, such a bare-bones

reference does not meet the standards of Rule 28 and independently waives the

argument in this Court. *See, e.g.*, *Foster v. Univ. of Md.- East. Shore*, 787 F.3d

243, 250 n.8 (4th Cir. 2015) (holding conclusory argument raised in footnote is

waived on appeal); *see also United States v. Al-Hamdi*, 356 F.3d 564, 571 n.8 (4th

Cir. 2004) ("It is a well settled rule that contentions not raised in the argument section of the opening brief are abandoned.").

But second, even were the question properly raised, it contradicts defendant's repeated affirmative statements in the district court that he was not, in fact, challenging the forfeitability of any of the nine devices "(as opposed to the non-contraband contents)." SA3, SA4-5. Moreover, as to 1B24 specifically, defense counsel explicitly conceded at the hearing that "if the agent has signed an affidavit or declaration saying it contains contraband, we have no evidence to the contrary" and that "[a]s long as there is evidence that there is actually contraband on that device, we can't object to its forfeiture." JA186-187; *see also* JA102-103 (Eckert affidavit, describing contraband on 1B24). The district court accepted those concessions and stated the parties' agreement on forfeitability in its order. JA225.

Accordingly, the Court cannot consider defendant's arguments on appeal outside the scope he himself expressly defined below: specific categories of files on three devices—1B2, 1B19, and 1B27. All other arguments are waived or, if the Court concludes they were not waived, at maximum reviewable for plain error.

## B. The plain text of § 2253(a)(1) and (a)(3) requires the forfeiture of electronic devices in their entirety.

Sanders first argues that non-contraband electronic files are not forfeitable under 18 U.S.C. § 2253, as these files constitute separate property from the

14

contraband files and electronic devices and storage devices are not "other matter" covered by the statute.

When it comes to statutory interpretation, courts begin with the text. *See Taylor v. Grubbs*, 930 F.3d 611, 616 (4th Cir. 2019). Of course, in determining the meaning of a statute, "words will be interpreted as taking their ordinary, contemporary, common meaning." *United States v. Serafini*, 826 F.3d 146, 149 (4th Cir. 2016) (quoting *Perrin v. United States*, 444 U.S. 37, 432 (1979)). "Where the text is unambiguous, [the] inquiry is complete." *Taylor*, 930 F.3d at 616 (citing *Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 138 S. Ct. 617, 631 (2018)).

The criminal forfeiture statute here provides that defendants convicted of certain offenses, including those involved here, "shall forfeit to the United States such person's interest in" three categories of property:

> (1) any visual depiction described in section 2251, 2251A, or 2252[,] 2252A, 2252B, or 2260 of this chapter, or any book, magazine, periodical, film, videotape, or other matter which contains any such visual depiction, which was produced, transported, mailed, shipped or received in violation of this chapter;
>
> (2) any property real or personal, constituting or traceable to gross profits or other proceeds obtained from such offense; and

> (3) any property, real or personal, used or intended to be used to commit or to promote the commission of such offense or any property traceable to such property.

18 U.S.C. § 2253(a). Forfeiture of covered property is mandatory. *See United States v. Blackman*, 746 F.3d 137, 143 (4th Cir. 2014) (explaining that 18 U.S.C. § 2461(c), which provides "that the district court shall order forfeiture" for applicable offenses, "mandates that forfeiture be imposed when the relevant prerequisites are met"). This Court has therefore recognized that "a sentencing court does not have discretion to ignore a statutory forfeiture provision." *United States v. Jalaram, Inc.*, 599 F.3d 347, 351 n.3 (4th Cir. 2010) (citing *United States v. Monsanto*, 491 U.S. 600, 607 (1989)). Indeed, a district court commits "error" if it "withhold[s] forfeiture on the basis of equitable considerations." *Blackman*, 746 F.3d at 143.

Lastly, § 2253(b) explicitly states that "[s]ection 413 of the Controlled Substances Act (21 U.S.C. § 853) with the exceptions of subsections (a) and (d)[] applies to the criminal forfeiture of property pursuant to subsection (a)." Subsection 853(*o*), which is not excepted by § 2253(b), provides that "[t]he provisions of this section shall be liberally construed to effectuate its remedial purposes." The Supreme Court has emphasized this language signals Congress's express intent that the scope of forfeiture under the statute be broad and concluded that the rule of lenity did not apply. *See Russello v. United States*, 464 U.S. 16, 27

16

(1983) (considering 18 U.S.C. § 1983); *United States v. Rivera*, 884 F.2d 544, 546 (11th Cir. 1989) (holding that the liberal construction directive in § 853(*o*) displaces the rule of lenity because of Congress's explicitly stated intent).

Here, the district court correctly recognized that this language covers the electronic devices defendant used to receive and store child sexual abuse material under either subsection (a)(1) or (a)(3). *See* JA226-228. First and most obviously, the district court made a factual finding, relying on "the trial evidence and the declarations of Special Agents Eckert and Kochy," that all nine devices were "used by defendant in the commission of his child pornography offenses." JA225. Because defendant used these devices to "access and store visual depictions of child pornography" and also used them "(i) to direct his minor victims to produce sexually explicit images of themselves and (ii) to receive those images from his victims," the district court found that they constituted property, real or personal, used or intended to be used to commit … such offense" under § 2253(a)(3). JA227-228. Second, the district court concluded that because "each of the nine devices contain images of child pornography," they constitute "other matter which contains any such visual depiction" under § 2253(a)(1). JA227.

None of defendant's challenges to these conclusions have merit.

### 1. Non-contraband files on a device used to commit child exploitation are not "separate property."

The district court found, and defendant has shown no clear error, that the devices were property used in committing the offenses under § 2253(a)(3). *See* JA225-228. Thus, the devices must be forfeited. *See, e.g.*, *United States v. Evers*, 669 F.3d 645, 660 (6th Cir. 2012) (stating that where examination of computer hard drive revealed "the offending images," the computer was subject to forfeiture). Instead of disputing this conclusion, defendant argues that non-contraband files on devices used to commit child exploitation offenses are "separate property" that cannot be forfeited. But this argument relies on faulty technical and legal premises.

As a matter of practical fact, defendant's assertion that the electronic data on the devices are somehow divisible "separate property" from the device itself is false. *See, e.g.,* Josh Goldfoot, *The Physical Computer & The Fourth Amendment*, 16 Berkeley J. Crim. L. 112, 155 (2011) ("Computer data does not have independent physical existence."). The "technological reality" is that "[d]ata is stored by manipulating physical objects: regions on a hard drive platter are magnetized, photosensitive dye on a CD is darkened, and floating gates in flash memory have voltage applied to them." *Ibid*. In other words, computers record and read data from their storage by physically manipulating the hard drive itself: positive and negative currents magnetize a hard drive platter in impulses called

"bits," which then represent "the smallest storage unit in a computer." Wayne

Jekot, *Computer Forensics, Search Strategies & the Particularity Requirement*, 7

U. Pitt. J. Tech. L. & Pol'y 2, art. 5, at 7 (2007). Computers then repeat this

magnetization process to read stored data, which they manipulate and transmit as

"serial bit streams," relying on an operating-system-specific "file allocation table"

("FAT") to organize data and on a graphic interface to display data to users. *See id.*

at 8-9 (describing process). In other words, what we think of as virtual "data" is

accomplished by physical changes to the actual device on which they are stored.

Defendant appeals to a familiar "file cabinet" analogy in the Fourth

Amendment context (*see, e.g.*, Def. Br. 25-27), but courts have recognized that

even the concept of easily segregable "files" on a storage device is a heuristic

shortcut for users that does not reflect technological reality. As the en banc Second

Circuit described, analyzing relevant literature, the "file cabinet analogy is only

that—an analogy, and an imperfect one." *United States v. Ganias*, 824 F.3d 199,

212 (2d Cir. 2016) (en banc). Rather, "[e]ven the most conventional 'files'—word

documents and spreadsheets such as those the Government searched in this case—

are not maintained like files in a file cabinet, in discrete physical locations separate

and distinct from other files" but "are in fact 'fragmented' on a storage devices,

potentially across physical locations" and include "unseen information," such as

"metadata" and "also prior version or edits that may still exist in the document or

19

associated temporary files." *Id.* at 212-13 (citing numerous sources). Thus, while "[a] user may conceive of the information on her computer as being 'files,' organized into 'folders' that are stored in various locations," in reality, a single conceptual file of electronic data "may be composed of many types of data and files, and the physical locations of data on a computer hard drive and even the software's organization of those data and files may be unrelated to the user's perception of how their data is organized." *State v. Mansour*, 421 P.3d 323, 197 (Ore. 2018).[2]

This Court has in fact analyzed the distinctions between data being physically stored on a device and the functionality of software. In *America Online, Inc. v. St. Paul Mercury Ins. Co.*, 347 F.3d 89, 91-92 (4th Cir. 2003), this Court addressed whether software bugs that "altered the plaintiffs' existing software, disrupted their network connections, caused the loss of stored data, and caused their operating systems to crash" constituted "physical damage to tangible property" under the software manufacturer's insurance coverage. Recognizing the physical alterations to stored data on a hard drive, the Court concluded that "the

---

[2] The Oregon Supreme Court in *Mansour* found that lawful seizure of a computer did not entitle the government to search the entirety of its contents but did on based on constitutional privacy interests and the particularity requirement for warrants (*see* 421 P.3d at 208-11), requirements that are not relevant to § 2253(a)(3)'s forfeiture of "property."

physical magnetic material on the hard drive that retains data, information, and instructions is tangible property." *Id.* at 94-95. The Court concluded, however, that where a software bug affected *only* the functionality of the software itself and did not "damage" the "circuits, switches, drives, and any other physical components of the computer," it was "not physical damage to tangible property," as covered by the policy. *Id.* at 96. Thus, while the Court concluded that "the data itself must be considered apart from the medium," it did so in the context of determining "the question of whether the data, information, and instructions … are *tangible* property" and whether a loss of functionality in that data constituted "'*physical* damage to *tangible* property'" under the insurance contract. *Id.* at 95-96 (emphases added).

But critically, the Court agreed with the software company's characterization of the physicality of stored data:

> 'The data consists of small electromagnets in certain alignments. Once data is stored in a cell of a hard drive, that cell is physically different from a cell without data, and the physical differences between the two cells can be detected through the use of certain tools. Data stored on a hard drive is visible with the use of a microscope.'
>
> …
>
> Thus, employing these ordinary meanings, we conclude that the physical magnetic material on the hard drive that retains data, information, and instructions is tangible property.

*Id.* at 94-95. The physical state of the hard drive, with portions that are magnetized or not to hold the data it contains, is thus a physical property of the device itself. Put differently, a storage device that contains Data A and Data B has different physical characteristics than an otherwise identical storage device that contains only Data A.

When an electronic device is forfeited, therefore, it exists in a certain physical state that depends on, and is inextricable from, the contents of the electronic data stored on it. Changes to that data would necessarily change the physical properties of the device, by altering the magnetization on its storage device. Practically speaking, defendant's request for the "return" of this electronic data is physically impossible without returning the device itself. Defendant's request instead seeks to compel the government to create copies of the data and place them on a different storage device, in which case the government is not "returning" anything but is instead creating identical, new versions on new property. Then, by deleting the "returned" electronic data from the forfeited device, the government would be altering the physical state of the device itself.

There is no legal basis to hold that the government is compelled to alter the physical state of forfeited property in order to take title, as it would necessarily need to do here if defendant's argument succeeds. While defendant perhaps conceptualizes electronic data as papers laid upon and then removed from a table

without affecting the table underneath, the reality is that electronic data more resembles etchings on the table itself. Etchings may be sanded and repainted away, but there is no interpretation—plain-meaning, statutorily defined, or otherwise—of the word "property" in § 2253(a)(3) that would define the table and the etchings as separate property to be forfeited or not independently. If the table is subject to forfeiture while it has etchings upon it, the etchings come with the table. If the electronic device is forfeited, its hard drive magnetized in a certain way to store certain data necessarily comes with it, and nothing in § 2253(a)(3)'s text compels the government to alter the device's physical state or permits forfeiture something less than or different from the device as it exists at the time of forfeiture.

Accordingly, defendant's appeal to 21 U.S.C. § 853(b)'s incorporation of "intangible personal property" in the definition of property is a red herring. *See* Def. Br. 23. No one disputes that a person's electronic data can be property. The question is whether a specific copy of electronic data, present on a device through physical magnetization of that device's hard drive, is somehow *distinct property* from that device, such that § 2253(a)(3)'s reference to "property" refers only to the latter and not the former. About this question, § 853(b) has nothing to say.

To the contrary, § 2253(a)(3) takes a broad view of forfeitable property. It covers not just property "used or intended to be used to commit" the crime but also property "used or intended to be used … to promote" its commission. § 2253(a)(3).

23

This Court has concluded that this language covers property used as "*facilitating property.*" *Jalaram, Inc.*, 599 F.3d at 351. Interpreting another statute covering facilitating property, this Court has concluded that the property need not be "integral, essential or indispensable" to the criminal conduct but "need only make the prohibited conduct less difficult or more or less free from obstruction or hindrance." *United States v. Schifferli*, 895 F.3d 987, 990 (4th Cir. 1990). The types of property held to be forfeited under this provision are quite varied. *See, e.g.*, *Matter of Search of One Address in Washington, D.C., Under Rule 41*, 512 F. Supp. 3d 23, 28-29 (D.D.C. 2021) (citing examples). Defendant's assertion that district courts must engage in a file-by-file parsing before ordering forfeiture is inconsistent with both technological realities defining the nature of the property and contrary to the plain meaning of § 2253(a)(3)'s broad language, reinforced by the liberal construction required by § 853(*o*) and § 2253(b).[3]

---

[3] It is also not so clear-cut as defendant would make it seem. As the district court held below, "the trial evidence in this case demonstrated that the Defendant offered employment in his businesses to several of the minor victims." JA232. Not only may there be other statutory restrictions on what data could be returned to defendant (*e.g.*, 18 U.S.C. §§ 3509, 3771), but computer data that is not prohibited visual depictions that nonetheless facilitated the criminal activity, such as the data related to the conduct described by the district court, would still be forfeited under § 2253(a)(3). *See also United States v. Wernick*, 673 F. App'x 21, 25 (2d Cir. 2016) (noting that it was "impossible confidently to conclude" that remaining non-contraband data was not "used to facilitate the offenses of conviction").

Defendant cites no case—and the government has found none—holding that an electronic file is distinct property from the device on which it is stored and must be excluded from forfeiture, under § 2253(a) or any other federal forfeiture statute. To the contrary, courts addressing the issue have adopted the government's view, including this Court in an unpublished opinion.

In *United States v. Hoffman*, No. 2:12-cr-184, 2018 WL 5973763 (E.D. Va. Nov. 14, 2018), the district court denied defendant's motion for return of electronic data contained on forfeited devices under Rule 41. There, after defendant was convicted of attempted espionage under 18 U.S.C. § 794, the court entered a consent forfeiture order "listing numerous electronic items to be forfeited pursuant to 18 U.S.C. § 794(d)." *Id.* at *1. Defendant later moved for the return of "all electronic media (i.e., family and professional photos, videos, and documents) in their original file format, from the devices forfeited … because such items were never forfeited [and] have never been considered contraband." *Ibid.* He argued that "electronic media is a wholly distinct and separate piece of property from the storage medium" and that the forfeiture order specified only "physical devices or media related to defendant's conviction" and therefore did not cover "electronic family media." *Id.* at *3. Rejecting this argument, the district court concluded that "Petitioner's electronic devices as a whole, including all of their files and programs, were subject to the Consent Order" and concluded that "there is not

25

language in 18 U.S.C. § 794(d) … indicating that only a portion of the forfeited property can be forfeited." *Ibid*. On appeal, this Court "affirm[ed] for the reasons stated by the district court." *United States v. Hoffman*, 764 F. App'x 399, 399 (4th Cir. 2019).

Although addressing the forfeiture provisions of § 794(d), the district court in *Hoffman* relied on the Third Circuit's interpretation of § 2253(a)(3) itself in *United States v. Noyes*, 557 F. App'x 125 (3d Cir. 2014). Defendant's statement that *Noyes* was "largely decided on procedural grounds" (Def. Br. 29) is incorrect. The Third Circuit unequivocally held that § 2253(a)(3) applied to "the computers as a whole, including all of their files and programs" because "[t]here is nothing in the statute which indicates that only a portion of the property can be forfeited." *Id.* at 127; *see also State v. Kremer*, 907 N.W.2d 403 (N.D. 2018) (relying on *Noyes* to hold that state forfeiture statute with similar wording required forfeiture of non-contraband files also). In doing so, *Noyes* cited *United States v. Hull*, 606 F.3d 524 (8th Cir. 2010). In that case, the Eighth Circuit determined that the defendant had "set up a computer in his home, connected to the Internet, and distributed child pornography from there" and that the use of the real property had "a substantial role," qualifying as property covered by § 2253(a)(3). *Id.* at 527-28. Accordingly, the court affirmed not only forfeiture of the computer used, but the house in which it was used, *and* the rest of the acreage acquired under the same deed. *Id.*

This Court took a similar approach in *United States v. Santoro*, 866 F.2d 1538 (4th Cir. 1989). There, defendant argued that because they only sold cocaine on a five-acre portion of land separated from the nineteen-acre other portion, only the five-acre portion should be forfeited. *Id.* at 1543. But despite the two portions being taxed as separate parcels, the deed recorded them as one tract, and the Court ordered forfeiture of both portion, because "[t]he claimants' subjective characterization of the property as two tracts" did not create distinct properties. *Ibid.* Similarly, here, the subjective user experience of files as discrete items cannot overturn the physical and legal reality that electronic data is stored on a device as a physical characteristics of that device.

In *United States v. Wernick*, 148 F. Supp. 3d 271 (E.D.N.Y. 2015), the district court confronted a defendant's argument that his non-contraband files on forfeited devices were not covered by § 2253(a). It rejected this claim, concluding that terminating defendant's interest in the devices, "of semantic necessity, includes their contents *in toto* and related mirror-images." *Id.* at 274-76. It also rejected defendant's assertion, as is made here, that electronic data "'is readily movable and severable from any device in which it may reside,'" noting that the non-contraband data "is intertwined with its contraband counterparts as previously explained." *Id.* at 275. Again, defendant's suggestion that these courts failed to reach the merits is unavailing. *Cf.* Def. Br. 29. The Second Circuit affirmed on the

grounds that the district court had discretion to deny return under Rule 41 considering the commingling of data and the significant resources required to segregate returnable data from data "used to facilitate the offenses of conviction." *United States v. Wernick*, 673 F. App'x 21, 25 (2d Cir. 2016). It declined to reach the question whether a defendant ever had an entitlement to the return of electronic data "unconnected to criminal activity" on a forfeited device. *Id.*

None of defendant's cited cases are apposite. In *United States v. Smith*, 966 F.2d 1045 (6th Cir. 1992), for example, the court turned to land recording instruments to answer the specific question of determining a single unit of real property under the criminal drug forfeiture statute, which the statute itself recognizes as a different species of property from "tangible and intangible personal property." *See* 21 U.S.C. § 853(b)(1)–(2). In doing so, *Smith* determined that it would analogize to the *civil* drug forfeiture statute's discussion of real property, and so relied on this Court's decisions in *Santoro*, discussed above, and *United States v. Reynolds*, 856 F.2d 675, 677 (4th Cir. 1988), both of which interpreted that statute's forfeiture of "the whole of any lot or tract of land" used. *See Santoro*, 866 F.2d at 1543 (quoting 21 U.S.C. 881(a)(7)); *Reynolds,* 856 F.2d at 1053 (same).

Thus, while *Smith* reasonably looked to the civil forfeiture statute's scope for real property in interpreting § 853(a) and (b)(1)'s application to real property, it

has nothing to say about whether electronic data is separate property from the devices on which the data is physically stored. To the contrary, *Smith* and *Santoro* both affirm the principle that an owner's "subjective characterization of the property … cannot serve as the legal basis for determining property." *Smith*, 966 F.2d at 1053 (quoting *Santoro*, 866 F.2d at 1543). As discussed above, a user or owner's perception of his electronic data as separate from the media device on which it is stored is an illusory construct of software design; the actual physical realities demonstrate that electronic data is integrated into the device through manipulation of and changes to the object's physical characteristics.

Similarly, *United States v. One 1998 Tractor*, 288 F. Supp 2d 710 (W.D. Va. 2003), fares no better. In it, the district court interpreted not the word "property" but the word "vehicle," found in 49 U.S.C. § 80303, and relied on both *Santoro* and a First Circuit's decision that a tug and its barge were distinct "vessels" under the statute. *Id.* at 712 (citing *The Dolphin*, 3 F.2d 1 (1st Cir. 1925)). On appeal, defendant raised only an Eighth Amendment claim, and this Court did not address the scope of the statute. *See United States v. Shimshiryan*, 114 F. App'x 863 (4th Cir. 2004). Whatever *Tractor* and *Shimshiryan*'s relevance, this Court's decision in *Hoffman* affirming the district court on the merits of this precise issue is more directly on point. *See* 764 F. App'x at 399.

Returning to defendant's other case law, each case relies on concepts or rules that are simply not present in § 2253(a)'s definitions of property or relevant to its consideration. For example, *In re Grand Jury Subpoena*, 846 F. Supp. 11, 12 (S.D.N.Y. 1994), turned on Rule 17(c)'s requirement that the subpoena have a "reasonable probability" to "produce information relevant to the general subject of the grand jury's investigation." *See also id.* at 12-13 (citing *In re Horowitz*, 482 F.2d 72 (2d Cir. 1973)). Such a determination of relevancy and the reasonableness of a subpoena's scope again have nothing to do with whether either the legal question of the scope of "property" under § 2253(a)(3) or the technological realities demonstrating that electronic data is physically integrated into the storage device it occupies.

Likewise, whether a particular instance of consent waives Fourth Amendment privacy interests is a fundamentally different question from whether electronic data is the same "property" as the storage media. *E.g.*, *Trulock v. Freeh*, 275 F.3d 391, 403 (4th Cir. 2001) (noting that "[a]uthority to consent originates not from a mere property interest but instead from mutual use of the property by persons generally having joint access or control for most purposes" such that "others have assumed the risk that one of their number might permit the common area to be searched"); *United States v. David*, 756 F. Supp. 1385, 1390 (D. Nev. 1991) (holding that an electronic device "is entitled to the same Fourth

Amendment protections" and analyzing whether defendant consented to search). To analogize, a landlord's inability to consent to a police search of his renter's room for Fourth Amendment purposes (*e.g.*, *United States v. Stevenson*, 396 F.3d 538, 546 (4th Cir. 2005)) would not render the room "separate property" from the house in the context of a forfeiture.

Defendant's other Fourth Amendment cases likewise turn on issues specific to Fourth Amendment principles that are not present in the forfeiture statute or the concept of "property" in § 2253(a)(3). *See, e.g.*, *United States v. Comprehensive Drug Testing, Inc.*, 579 F.3d 989 (9th Cir. 2009) (en banc) (applying *United States v. Tamura*, 964 F.2d 591 (9th Cir. 1982), which laid out procedures for ensuring large-scale seizure of electronic data complied with warrant's particularity requirement); *United States v. Metter*, 860 F. Supp 2d 205, 212-13 (E.D.N.Y. 2012) (holding that Fourth Amendment's requirement that execution of warrant be reasonable limited government's ability to retain seized electronic data indefinitely); *United States v. Debbi*, 244 F. Supp. 2d 235, 237-38 (S.D.N.Y 2003) (holding simply that the government may not ignore the plain language of the warrant authorizing what may be seized). Cases applying a particularity or reasonable execution standard—such authorizing seizure of some but not all electronic data on a particular storage device—do not necessarily imply that the device may be considered "separate property" from its data. The Supreme Court

31

has said that "probable cause to believe that a stolen lawnmower may be found in a garage will not support a warrant to search an upstairs bedroom." *Maryland v. Garrison*, 480 U.S. 79, 84-85 (1987) (quoting *United States v. Ross*, 456 U.S. 798, 824 (1982)). But that particularization would not render the garage separate property for purposes of a real-property forfeiture under § 2253(a)(3) or *Santoro*.

Nor is defendant's use of Fourth Amendment concepts even consistent with the way federal courts read warrants authorizing the seizure of electronic storage devices. Both the Fourth Amendment and Rule 41 require that a warrant "particularly describe[e] the place to be searched, and the persons or things to be seized" (U.S. Const., amend. IV) and "identify the person or property to be searched" or "any person or property to be seized" (Fed. R. Crim. P. 41(e)(2)(A)). Yet courts regularly hold that a warrant authorizing seizure of an electronic storage device authorizes a search of its stored electronic data as well, treating it—in essence—as one unitary thing. *See, e.g.*, *United States v. Fifer*, 863 F.3d 759, 766 (7th Cir. 2017) (rejecting argument that a warrant authorizing seizure of electronic devices did not authorize law enforcement to search the electronic data stored on them); *United States v. Schesso*, 730 F.3d 1040, 1043, 1046 (9th Cir. 2013) (holding that warrant authorizing seizure of "any computer or electronic equipment or digital data storage devices" as authorizing subsequent search of electronic data stored on those devices). In fact, as *Fifer* and *Schesso* point out, Rule 41 expressly

provides that a warrant "authorizing seizure of electronic storage media …
authorizes a later review of the media … consistent with the warrant." Fed. R.
Crim. P. 41(e)(2)(B); *see also* Fed. R. Crim. P. 41(f)(1)(B) (providing that when
making an inventory list "involving the seizure of electronic storage media or the
seizure or copying of electronic stored information," the inventory may be limited
to describing the physical storage media that were seized or copied"). Defendant's
suggestion that electronic data is fundamentally independent of, and severable
from, the device on which it is stored is simply not borne out by technology,
ordinary practice, or legal authority.

This Court held in *United States v. Williams*, 592 F.3d 511, 521-22 (4th Cir.
2010), that a warrant "authorizing a search of Williams' computers and digital
media … impliedly authorized officers to open *each file on the computer* and view
its contents." This conclusion supports the idea that even under Fourth Amendment
standards, electronic data contained on a seized device is not its own "separate
property" for purposes of warrant execution. *See id.* at 521. But at its core, the
holdings of *Williams* are grounded in the reasonableness of an authorizing warrant,
the adequacy of its particularity, and the application of the plain-view doctrine in
executing that warrant. *See, e.g.*, *id.* at 519-20. The two inquiries are just apples
and oranges, and analyses generated under a constitutional standard of
"reasonableness" have very little to do with the physical and practical realities of

computer storage devices as items of property. This Court should resist defendant's invitation to import conceptually distinct principles, and technologically inaccurate analogies, into an analysis that is entirely unrelated.

In sum, as a technological matter, these devices hold the forfeited files as magnetized portions of their hard drives; they are thus present as physical characteristics of the device. Courts interpreting this and other analogous forfeiture statutes have uniformly concluded that the forfeiture should encompass both the device and the electronic data on it. Defendant's arguments to the contrary rely on inaccurate analogies to inapposite doctrines and should be rejected.

### 2. Alternately, the devices and their contents are "other matter" containing contraband under § 2253(a)(1).

Independently, § 2253 provides for the forfeiture of "any visual depiction described in [covered offenses], or any book, magazine, periodical, film, videotape, or other matter which contains any such visual depiction." § 2253(a)(1). Again, it is beyond dispute that the district court had an adequate factual basis for concluding that these storage devices all "contain visual depictions of child pornography." JA225 (citing trial evidence and agent declarations). Defendant concedes that "matter" has a broad plain meaning and provides no definition—dictionary, common law, or statutory—that would limit its meaning in some way

as to exclude electronic storage devices. *See* Def. Br. 13.[4] Congress has explicitly

instructed that these forfeiture statutes be liberally construed. *See* § 2253(b)

(incorporating, *inter alia*, § 853(*o*)). Accordingly, the district court correctly

concluded that the forfeited electronic devices constituted such "other matter" and

that this provision "makes no exception for non-contraband material contained" on

them. JA227.

      In response to this straightforward application, defendant appeals to *Yates v.*

*United States*, 574 U.S. 528 (2015) (plurality opinion), and 18 U.S.C. § 2252(a) to

argue that this Court should give the words "other matter" a narrower construction

than their plain meaning suggest. But both these sources support the government's

argument. In *Yates*, the plurality held that despite being an object and tangible, a

fish did not fall within the statutory phrase "any record, document or tangible

object" in a statutory section titled "Destruction, alteration, or falsification of

records in Federal investigations and bankruptcy" contained within a chapter

covering "obstructive acts in specific contexts." 574 U.S. at 539-41. Thus, both

"the specific context in which that language is used, and the broader context of the

statute as a whole," indicated a more limited application. *See id.* at 537. Justice

---

    [4] Indeed, "nonmailable matter" under 39 U.S.C. § 3001 includes, in addition to printed material, such wide-ranging items as firearms, poisonous animals, explosives, disease germs, improperly labeled food or cosmetics, and fuel. *See* § 3001(a), (f), (g) (citing 18 U.S.C. §§ 1715, 1716, and 15 U.S.C. § 1471).

Alito concurred in judgment, concluding that the verbs used in the statute and the section title heavily implied their application solely to "filekeeping, not fish." *Id.* at 551-52 (Alito, J., concurring in the judgment).

But unlike in *Yates*, the difference between electronic storage media and the other described materials is not the difference between a fish and a file. Defendant argues that electronic devices do not share features common to the other items. Def. Br. 13-14. First, defendant's list selectively omits features that these items *do* have in common with electronic devices. Like a "book, magazine, periodical, film, [or] videotape," an electronic device is a medium of information (not a marine animal), including particularly of visual depictions—the specific context of § 2253 and its referenced offenses. *See, e.g.*, *United States v. Lacy*, 119 F.3d 742, 748 (9th Cir. 1997)("Here, the word 'matter' appears at the end of the list 'books, magazines, periodicals, films, and videotapes,' all of which are physical media capable of containing images."). Second, contrary to defendant's argument (Def. Br. 14), an electronic device *can* be separately viewed, copied, and transmitted; all of defendant's forfeited devices are notable for their portability, all could be copied onto other electronic storage media (as defendant wants to make the government do to "return" the data), and all could be transmitted, for example electronically through an online file-sharing service or physically through the mails. JA222 (describing thumb drives, laptops, iPads, and iPhones).

36

Nor is a videotape a medium "from which content cannot be removed without destroying their original form" (Def. Br. 14): videotapes, like CDs, DVDs, portable hard drives, and other reusable media, can be taped over with new content that erases the old. This feature was even widely used when Congress enacted § 2253(a)(1). *See* Pub. L. 100-690, sec. 7522(c), 102 Stat. 4181, 4494 (Nov. 18, 1988) (enacting subsection (a)(1), referencing forfeiture of videotapes); *cf. Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 422-23 (1984) (discussing Betamax tape recorders and observing that "[t]apes may be reused, and programs that have been recorded may be erased either before or after viewing"). While a "film" may connote a single piece of continuous artistic expression, a videotape can contain several, entirely unrelated such films. Yet the presence of a film containing a prohibited visual depiction forfeits the tape as a whole. Defendant's argument would, in this context, require the government to copy the remaining non-offending movies onto a new tape and give them back to him. Nothing in § 2253(a)(1) supports such measures.

Defendant cites to Congress's amendment to § 2252(a)(4) in the Child Pornography Prevention Act of 1996 (CPPA) to argue that Congress understood "other matter" to exclude electronic storage devices. *See* Def. Br. 17. But

defendant is looking at the wrong part of the Act.[5] In the same legislation, Congress amended the definition of "visual depiction" in § 2256 (which defines terms for the entire chapter) to include "*data stored on computer disk* or by electronic means which is capable of conversation into a visual image." Pub. L. 104-208, sec. 121(2), 110 Stat. 3009, 3009-027 (Sept. 30, 1996) (amending 18 U.S.C. § 2256(5)) (emphasis added). Reading "visual depiction" in § 2253(a)(1) with this definition in mind makes the district court's conclusion unassailable: a defendant forfeits "any data stored on computer disk described in [the covered offenses], or any book, magazine, periodical, film, videotape, or other matter which contains *any such data*." A "matter" that contains "data stored on a computer disk" is the disk itself.

Defendant cites to *United States v. Vig*, 167 F.3d 443 (8th Cir. 1999), but again, that case helps the government. The Eighth Circuit endorsed the broad sweep of "other matter," holding that "[t]he language indicates that 'other matter' is simply something which, at a minimum, must be capable of containing a visual

---

[5] When Congress amended then-§ 2252A to contain the "including by computer" language, it did so throughout the rest of the section to broaden the covered *means of transportation* as the jurisdictional element. *See* Pub. L. 104-208, sec. 121(3), 110 Stat. at 3009-028 to 3009-029. *Cf.* § 2252(a). Thus, it is likely that "including by computer" in § 2252(a)(4)(B) was modifying the jurisdictional element, not the description of "other matter," such that the depiction must have been transported in interstate commerce, or made using materials so transported, "by any means including by computer."

depiction," which a computer image file does. *Id.* at 447. It then cited the Seventh Circuit, which had held that "[a]lthough the statute does not define 'other matter,' plain meaning suggests a prohibition of three or more of *anything* containing a visual depiction transported in interstate commerce." *Ibid.* (quoting *United States v. Hall*, 142 F.3d 988, 999 (7th Cir. 1998)). And it recognized the Ninth Circuit's concession in *United States v. Lacy*, 119 F.3d 742, 748 (9th Cir. 1997), that "both disks and image files could be viewed as containing visual depictions." *Vig*, 167 F.3d at 447-48. Nothing about *Vig* concludes that only one of the two—a single image file *or* a hard drive—can be a "matter" that contains an offending visual depiction.[6] To the contrary, the broad definition endorsed by *Vig* and *Hall* suggest that both can and are but that the statutory purposes of § 2252 require treating each image as a separate unit of prosecution to avoid absurd results. *See Vig*, 167 F.3d at 448. That *both-and* construction is particularly appropriate in the forfeiture statute, where Congress has mandated liberal construction of its provisions. *See* § 2253(b) (incorporating § 853(*o*)).

---

[6] Similarly, the Ninth Circuit in *United States v. Fellows*, 157 F.3d 1197, 1201 (9th Cir. 1998), held that a graphics file qualified as an "item" containing a visual depiction under the Guidelines and rejected defendant's argument that *only* the hard drive could be an item; it did not say that a hard drive could not be an item, merely that a graphics file was.

Defendant wants to introduce a parsimony requirement into the statute: "other matter" must mean *only* the smallest unit capable of containing a visual depiction, such as a file. But this principle appears nowhere in the text and, indeed, is contrary to both the explicit directive of liberal construction in § 2253(b) and § 853(*o*) and the surrounding context.[7] As discussed above, a "film" and a "videotape" are separately listed items in § 2253(a)(1), but a videotape may easily contain several films. Indeed, the clear import of § 2253(a)(1) is that the defendant forfeits not only the visual depiction itself but also the medium that contains it. When a book, magazine, periodical, or videotape containing one prohibited visual depiction is forfeited, non-contraband material it *also* contains—perhaps entirely unrelated—comes with it. So too with an electronic device: it and its contents—contraband or not—are forfeited as a whole.

Defendant's policy arguments about the scope of potentially non-contraband material forfeited are simply not relevant to construction of the forfeiture statute. *See, e.g.*, *Blackman*, 746 F.3d at 143 (holding that a district court commits "error"

---

[7] As discussed above, the Supreme Court has recognized that Congress's express directive to use liberal construction of a forfeiture statute eliminates the need to apply the rule of lenity, which occurs only *after* all statutory construction tools have been exhausted. *See Russello*, 464 U.S. at 29 (noting the rule of lenity operates "at the end of the process of construing what Congress has expressed, not at the beginning as an overriding consideration of being lenient to wrong-doers"). Accordingly, defendant's final appeal to the rule of lenity is unavailing in light of the statute's plain meaning and liberal construction. *Cf.* Def. Br. 21-22.

if it "withhold[s] forfeiture on the basis of equitable considerations"). The statute does not qualify its mandatory language with a balancing test considering the volume of non-contraband versus contraband material on the medium. A thousand-page book or a six-hour cinematic masterpiece each containing only one prohibited visual depiction must both be forfeited in their entirety; the statute does not compel the government to selectively tear the offending page from the book or cut the offending scene from the film or videotape, however much non-offending content exists alongside it. Yet here, the practical effect of defendant's argument is to compel the government to engage in exactly this kind of selectively, creating and placing new copies of non-contraband material on new devices and passing them back to him. Section 2253(a)(1) unequivocally rejects that model of forfeiture, and the district court did not err in so holding.

* * *

In sum, forfeiture is mandatory under both § 2253(a)(1) and (a)(3), either of which provides an independent basis to affirm the district court's order. The plain language of both provisions, understood in their legislative history and the practical realities of electronic data storage, compel the conclusion that electronic devices on which child sexual abuse material is stored are forfeited in their entirety, including any non-contraband data stored concomitantly with that illegal material.

II.    **Alternatively, the district court had ample discretion under Rule 41(g) to deny the return of non-contraband material held on forfeited devices.**

Although it appears not to have published an opinion so stating, this Court's unpublished opinions consistently apply abuse-of-discretion review to Rule 41(g) denials. *See, e.g.*, *United States v. Roca*, 676 F. App'x 194 (4th Cir. 2017) (citing *United States v. Chambers*, 192 F.3d 374, 376 (3d Cir. 1999)); *see also United States v. Soza*, 599 F. App'x 69, 70 (4th Cir. 2015) (same); *United States v. Mitchell*, 324 F. App'x 264, 265 (4th Cir. 2009).

Similarly, while this Court has not addressed the issue in a published opinion, other courts of appeals recognize that a motion for the return of property under Rule 41(g) seeks equitable relief from the district court and therefore is not appropriate where an adequate remedy at law exists. *See, e.g.*, *United States v. Zaleski*, 686 F.3d 90, 92 (2d Cir. 2012) (citing *De Almedia v. United States*, 459 F.3d 377, 382 (2d Cir. 2006)); *Brown v. United States*, 692 F.3d 550, 552-53 (6th Cir. 2012); *United States v. Howell*, 425 F.3d 971, 974 (11th Cir. 2005).[8] This Court has adopted the same view in a pre-2007 unpublished opinion. *See Babb v. U.S. Drug Enf. Agency*, 146 F. App'x 614, 619 (4th Cir. 2005) (holding that "a party who claims that the government must return seized property still must

---

[8] Courts have thus held that a defendant cannot use a Rule 41(g) motion to challenge forfeiture of property. *See United States v. Bernard*, 537 F. App'x 72, 74 (3d Cir. 2013); *Young v. United States*, 489 F.3d 313, 315 (7th Cir. 2007).

demonstrate lawful entitlement to the property and an equitable right to its return"). Without explicitly citing Rule 41 itself, the Supreme Court has stated that "[a] federal court has equitable authority, even after a criminal proceeding has ended, to order a law enforcement agency to turn over property it has obtained during the case to the rightful owner or his designee." *Henderson v. United States*, 575 U.S. 622, 625-26 (2015).

Because of its equitable nature, therefore, courts have also held that there are other reasons, beyond forfeiture, that justify Rule 41(g) denials. In *Rudisill*, 358 F. App'x 421, 422 (4th Cir. 2009), for example, this Court cited the Ninth Circuit's opinion holding that courts may deny return if "the government's need for the property as evidence continues." 358 F. App'x at 422 (quoting *United States v. Van Cauwenberghe*, 934 F.2d 1048, 1060-61 (9th Cir. 1991)). Likewise, in *Wernick*, the Second Circuit considered the burden placed on the government to separate the non-contraband and contraband files from the defendant's electronic devices in affirming the district court's denial of Wernick's Rule 41(g) motion. *See* 673 F. App'x at 25. In *United States v. Davis*, 736 F. App'x 783 (11th Cir. 2020), the Eleventh Circuit addressed a defendant's Rule 41(g) motion for non-forfeited items, a laptop and the electronic data stored on an external hard drive. The court denied return on equitable grounds, concluding that the laptop and data contained

"records and communications" related to defendant's fraudulent capital management company. *See id.* at 788.

Here, the district court ruled in the alternative that the equities favored denying defendant's request for return of non-contraband data on his electronic devices. *See* JA231-233. First, the court found that defendant's request "would impose an unwarranted and substantial burden on government resources," including the time and expense of reviewing every file to determine whether it constitutes forfeited or non-forfeited material. JA232 & n.6. Second, the district court concluded that "any burden to the Defendant in this case is a result of the defendant's own wrongdoing," as defendant "is the one who decided to commingle family photographs and business records with images of child pornography." JA233. Other courts have similarly applied this "clean hands" principle to deny equitable relief in these circumstances. *See, e.g.*, *United States v. Kaczynski*, 551 F.3d 1120, 1129-1130 (9th Cir. 2009); *Howell*, 425 F.3d at 974.

The district court's conclusions are well founded. Sanders used these nine devices to produce and receive child pornography with at least five minor boys who were between the ages of 13 and 17 years old, and he received child pornography depicting a sixth minor boy in the same timeframe. Furthermore, Sanders placed the child pornography on these nine devices, making the

entanglement between his contraband and non-contraband data his own choice.[9]

The district court was rightfully skeptical of a rule obligating the government to

expend considerable resources, both in time and money, to disentangle Sanders's

data, when Sanders chose to create the entanglement himself in the first place. *Cf.*

*Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 245 (1933) (holding

that unclean hands doctrine applies where "violations of conscience as in some

measure affect the equitable relations between the parties").

Lastly, the government notes that defendant's direct appeal of his conviction

and sentence remains pending before this Court. *See United States v. Sanders*, No.

22-4242 (4th Cir.). In the event that the defendant's convictions are reversed and

remanded for a new trial, the government anticipates that it would need the same

items as evidence that it used in the first trial. The Eighth Circuit has held that such

a reason also constitutes a basis for denial of the equitable relief defendant seeks.

*See, e.g.*, *United States v. Saunders*, 957 F.2d 1488, 1495 (8th Cir. 1992) (holding

that "[t]he motion for the return of paperwork, even papers that were not

introduced at trial, was premature because defendant's direct appeal was still

pending").

---

[9] Defendant cites his own pleading to argue that the government overstated the burden on the FBI. *See* Def. Br. 31 n.9. But the district court made a finding of fact—subject to clear-error review only on appeal—that compliance would impose a substantial burden and cited the basis for that finding. JA232.

III.    **The forfeiture of defendant's devices and their content is not plainly erroneous under the Eighth Amendment.**

Defendant argues for the first time on appeal that the forfeiture of the contents of his devices renders his sentence grossly disproportionate under the Eighth Amendment. *See* Def. Br. 31-49. Defendant concedes this claim is reviewable solely for plain error. *See* Def. Br. 31.

To meet this standard, "(1) there must be an error; (2) the error must be plain, meaning obvious or clear under current law; and (3) the error must affect substantial rights." *United States v. Wallace*, 515 F.3d 327, 332 (4th Cir. 2008) (citing *United States v. Olano*, 507 U.S. 725, 732-34 (1993). Assuming the first three criteria are met, the Court exercises its discretion to correct the error "only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Massenburg*, 564 F.3d 337, 343 (4th Cir. 2009) (citations, alterations, and internal quotation marks omitted). "Importantly, the *defendant* bears the burden of satisfying each of the elements of the plain error standard." *Ibid.* (citing *United States v. Vonn*, 535 U.S. 55, 59 (2002)).

Notably, "an error is plain if the settled law of the Supreme Court or this circuit establishes that an error has occurred" by the time of "appellate consideration." *United States v. Carthorne*, 726 F.3d 503, 516 (4th Cir. 2013). The controlling law must address the "particular question" presented. *Ibid.* (citing cases requiring that the court "speak directly on a legal issue" and finding no plain error

46

where "our Court has never addressed the argument"). In the absence of a controlling opinion from the Supreme Court or this Court, a district court's error is only plain in the "exceedingly rare" case where "sister circuits have uniformly taken a position on an issue that has never been squarely presented to this Court." *Id.* at 516 n.14.

Defendant simply cannot make this showing. He does not cite a single case from the Supreme Court, from this Court, or from any federal court of appeals that has found the forfeiture of non-contraband data on forfeited electronic devices excessive under the Eighth Amendment.

He cites three Supreme Court cases and one Fourth Circuit case—*Austin v. United States*, 509 U.S. 602 (1993), *Alexander v. United States*, 509 U.S. 544 (1993), *United States v. Bajakajian*, 524 U.S. 321 (1998), and *Jalaram*, 599 F.3d 347—solely for the proposition that the Eighth Amendment applies to forfeitures. Fair enough, but such broad principles do not establish that the forfeiture of the devices *here* was excessive. Instead, defendant pivots his argument, suggesting that the district court's error was not conducting an Eighth Amendment proportionality analysis, *sua sponte* and without any objection or argument from defendant. *See, e.g.*, Def. Br. 41, 43 (arguing that "[s]ettled Supreme Court and Fourth Circuit law required the district court to engage in an Eighth Amendment proportionality review when ordering the forfeiture of property."). But none of these four cases

impose, explicitly or implicitly, a *sua sponte* duty to raise and decide an Eighth Amendment argument without an objection from defendant.

For good reason: that rule would be extraordinary. The Federal Rules unequivocally place the burden on defendants to object not only to a court's ruling but also to inform the court as to "the grounds for that objection." Fed. R. Crim. P. 51(b). This Court has squarely held that the defendant has the burden of demonstrating that a forfeiture is constitutionally excessive (*see United States v. Ahmad*, 213 F.3d 805, 816 (4th Cir. 2000)), which would be flatly incompatible with requiring the district court to raise and decide the issue *sua sponte*. Moreover, as the Supreme Court has explained, the "principle of party presentation … rel[ies] on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present":

> Courts do not, or should not, sally forth each day looking for wrongs to right. We wait for cases to come to us, and when they do we normally decide only questions presented by the parties.

*Greenlaw v. United States*, 554 U.S. 237, 244 (2008). Indeed, the Supreme Court unanimously reversed a court of appeals for injecting unraised constitutional issues into a case. *See United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020). *This Cour*t has likewise held that a district court lacks the authority to raise issues *sua sponte* where they do not impact "important institutional interests of the court,"

48

like jurisdiction or res judicata. *Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 653-57 (4th Cir. 2007).

Defendant next suggests that the Eighth Amendment analysis would come out in his favor, but again, he cites no cases rendering this conclusion "plain." The merits fail too. *See United States v. Hastings*, 134 F.3d 235, 240 (4th Cir. 1998) (holding that an error has an effect on substantial rights when "the error actually affected the outcome of the proceeding").

 To decide whether the forfeiture is grossly disproportional under the Eighth Amendment, this Court considers the following factors: "(1) the amount of the forfeiture and its relationship to the authorized penalty; (2) the nature and extent of the criminal activity; (3) the relationship between the crime charged and other crimes; and (4) the harm caused by the charged crime." *Jalaram*, 599 F.3d at 355–56 (cleaned up). "Because questions of proportionality are reserved primarily to the legislature, the *Bajakajian* test is highly deferential." *Blackman*, 746 F.3d at 144.

Here, all of the relevant factors weigh in favor of finding that the forfeiture of the devices in their entirety does not violate the Eighth Amendment.

First, courts consider the severity of the forfeiture relative to other maximum authorized penalties for the conduct. *See Jalaram*, 599 F.3d at 355. Notably, defendant has adduced *no* evidence about the amount of the "forfeiture" as

measured in the value or significance of the non-contraband data he wants

returned. He claims the court's order constituted the "forfeiture of a lifetime of

non-contraband personal files." Def. Br. 45. But defendant adduced no evidence in

the district court about the exact nature—or value—of these files. His initial

motion asserted, without supporting evidence, declaration, or documentation, only

that the forfeited devices "contain the only record of more than a decade of Mr.

Sanders's life, including personal photographs, personal and business records,

educational records, records of theater performances, contact information and

emails." JA70-71.[10] In his reply brief, defendant claimed that at most, one terabyte

of data was at issue and that defendant "would not be asking to export all files, or

even a substantial percentage" but merely "only certain, discrete types of personal

files." JA122-123; *cf.* JA138, JA141. Yet he still did not adduce any evidence that

would permit the district court, or this Court on appeal, to actually assess the

relative severity of the forfeiture.

---

[10] For example, there is no evidence about whether Mr. Sanders used the Apple's iCloud service with his forfeited Apple devices; the service permits storage of personal content like photos, documents, or contact information on Apple's servers and therefore could be used to restore certain stored data to new devices. *E.g.*, *Williams v. Apple, Inc.*, 449 F. Supp. 3d 892, 898 (N.D. Cal. 2020) (describing the service and Apple's provision of 5 gigabytes of iCloud storage for free to owners of devices).

Accordingly, absent from the record is any indication of any specific files that would, singly or in the aggregate, have a value grossly disproportionate to the other penalties authorized—which he admits included maximum fines of $250,000 *per count* (for a total maximum of $3 million) as well as restitution and special assessments. *Cf.* Def. Br. 34. Courts have used the amount of the fine as an indicator of the defendant's level of culpability. *See Jalaram*, 599 F.3d at 356 (noting that a $350,000 fine, as compared to a $5,000 fine in *Bajakajian*, as punishment "does not suggest a minimal level of culpability"); *Blackman n*, 746 F.3d at 144 (noting maximum statutory fine of $250,000 and Guidelines maximum fine of $150,000 for offense of conviction indicates a "substantial level of culpability").

While the exact value of the electronic devices is not in the record, it is fair to say that their value is far less than $250,000, let alone the $3 million aggregate authorized. And in another case, one could imagine, for example, some piece of electronic data that is so valuable as to warrant special consideration: the raw master tapes of a dead artist's last recording session or the original manuscript of an author's addition to the literary canon. But defendant's burden to show excessiveness (*Ahmad*, 213 F.3d at 816) compels at least some showing on his part

about the actual value or significance of the deprivation in question.[11] In short, the

evidence in the record comes nowhere close to establishing that the value of the

forfeited data nears, much less exceeds, the authorized fines for the conduct. *See*

*Jalaram*, 599 F.3d at 356-57 (concluding that a $358,000 forfeiture was not grossly

disproportionate in light of the offense's $350,000 maximum fine); *cf. United*

*States v. Holland*, 722 F. App'x 919, 930 (11th Cir. 2018) (holding that forfeiture

that "exceeds the statutory maximum [fine] for his offense by 431%" was not

grossly disproportionate); *United States v. Castello*, 611 F.3d 116, 123 (2d Cir.

2010) (holding $12 million forfeiture for offense with a $250,000 maximum fine

was not grossly disproportionate).

The second and fourth factors are the nature and extent of the criminal

activity and the harm caused by the offense. Courts have consistently recognized

that child pornography offenses are serious offenses that cause substantial harm.

*See, e.g.*, *New York v. Ferber*, 458 U.S. 747, 758 (1982) (recognizing the

legislators and authors of relevant literature agreed that "the use of children as

subjects of pornographic materials is harmful to the physiological, emotional, and

mental health of the child."); *Hull*, 606 F.3d at 530 (noting as part of Eighth

---

[11] Defendant has also cited no case, and the government is aware of none, that evaluates the *subjective* importance of the forfeited property to defendant in determining proportionality.

Amendment analysis that damage done by child pornography is well documented and distribution of child pornography is a serious offense); *United States v. Burgess*, 684 F.3d 445, 459 (4th Cir. 2012) (quoting *Ferber* and observing that "[i]t is well established that children featured in child pornography are harmed by the continuing dissemination and possession of that pornography").

Sanders was convicted of five counts of production of child pornography, six counts of receipt of child pornography, and one count of possession of child pornography. From 2017 to 2020, Sanders's communicated with minor children between the ages of 13 and 17 years old, having his minor victims record videos of themselves engaged in sexualized conduct like slapping their testicles. His conduct was heinous, it occurred over a long period of time and, most importantly, it caused substantial harm and lifelong trauma to several minors and their families. This harm was facilitated by the use of these electronic devices to receive and store child pornography and to communicate with his victims. Given the serious nature of the offense and the substantial connection between these devices and the defendant's conduct, the forfeiture of these devices in their entirety is appropriate. *See United States v. 7046 Park Vista Rd.*, 537 F. Supp. 2d 929, 941 (S.D. Ohio 2008) (finding forfeiture of real property not excessive as crimes involving child pornography are serious and residence was used to transmit, receive, and produce child pornography and the property was crucial in defendant's ability to commit

the crimes undetected); *Wilk*, 2007 WL 2263942, at *1 (finding forfeiture of residence not excessive where defendant downloaded in excess of 90 images of child pornography in residence and privacy of residence enabled defendant to engage in such activities without fear of discovery or public scrutiny).

The third factor is the relationship between the crime charged and other crimes. Here, the forfeited electronic devices are all core instrumentalities of Sanders's illegal child pornography activity. This case does not implicate the type of concern present in *Bajakajian* where the government sought the forfeiture of a large amount of currency unrelated to criminal activity for a reporting violation. *See, e.g.*, 524 U.S. at 325, 337-38 (considering forfeiture of $357,000, which was not itself criminal proceeds, for failing to disclose the amount to customs). Unlike the respondent in *Bajakajian*, there is a substantial connection between the property the government seeks to forfeit and serious criminal activity. Therefore, the third factor also weighs in favor of finding that the forfeiture of these devices in their entirety is not excessive.

Here, considering all four factors, the forfeiture of the electronic devices in their entirety is not grossly disproportional to the gravity of the offense, particularly given Sanders's voluntary choice to use these devices in his criminal activity to exploit minors for sexual gratification. Accordingly, Sanders cannot

show that there was error at all, much less plain error that affected his substantial rights or that this Court should exercise its discretion to intervene.

## Conclusion

For the foregoing reasons, the court should affirm the district court's order of forfeiture.

Respectfully submitted,

Jessica D. Aber
United States Attorney

_____/s/_____

Annie Zanobini
Aidan Taft Grano-Mickelsen
Assistant United States Attorneys

## Statement Regarding Oral Argument

Given that the Court has no published precedent addressing the issues presented in this case, the United States defers to the Court on whether it would find oral argument helpful in this case.

## Certificate of Compliance

I certify that this brief was written using 14-point Times New Roman typeface and Microsoft Word 2016.

I further certify that this brief does not exceed 13,000 words (and is specifically 12,934 words) as counted by Microsoft Word, excluding the table of contents, table of authorities, statement regarding oral argument, this certificate, the certificate of service, and any addendum.

I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions.

_____
/s/

Annie Zanobini
Assistant United States Attorney