RECORD NO. 22-7054

*In The*

# United States Court of Appeals

## For The Fourth Circuit

## UNITED STATES OF AMERICA,

*Plaintiff – Appellee,*

**v.**

## ZACKARY ELLIS SANDERS,

*Defendant – Appellant.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
AT ALEXANDRIA**

_____

**REPLY BRIEF OF APPELLANT**

_____

**Nina J. Ginsberg**
**DIMUROGINSBERG, PC**
**1101 King Street, Suite 610**
**Alexandria, Virginia 22314**
**(703) 684-4333**

*Counsel for Appellant*

**THE LEX GROUP** ♦ 1108 East Main Street ♦ Suite 1400 ♦ Richmond, VA 23219
(804) 644-4419 ♦ (800) 856-4419 ♦ Fax: (804) 644-3660 ♦ www.thelexgroup.com

## TABLE OF CONTENTS

**Pages**

TABLE OF AUTHORITIES ........................................................................ iii

INTRODUCTION ....................................................................................... 1

ARGUMENT ............................................................................................... 4

I.    Data files are "separate property" from the devices in which they are stored ..................................................................... 4

    A.    The government failed to present evidence regarding the computer processes used to store and read computer data; therefore, the arguments are waived ........................................... 4

    B.    The so-called "technical realities" of data storage do not change the fact that data files are "separate property" distinct from the digital medium in which they are stored ........ 5

    C.    Electronic files are separate property that is distinct from the device on which it is stored ................................................... 8

II.    Fourth Amendment cases involving the seizure and return of electronic media turn on principles present in the forfeiture statute that treat electronic files as separate property from the storage devices themselves.  These cases were also cited by the government ............................................................................... 14

III.    Electronic storage devices are not considered "other matter" under § 2253(a)(1) .................................................................... 18

    A.    The definition of "visual depiction" in 18 U.S.C. § 2256 as including "data stored on a computer disk" refers to the data itself, not the computer ................................................. 19

IV.    The equities favor the return of Sanders's property ........................... 20

    A.    The district court abused its discretion ..................................... 22

i

V.    Forfeiture of the non-contraband data store in the forfeited
      devices violates the Eighth Amendment .............................................23

CONCLUSION ......................................................................................................26

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*America Online, Inc. v. St. Paul Mercury Ins. Co.*,
    347 F.3d 89 (4th Cir. 2003)...........................................................................6, 7

*Gross v. FBL Fin. Servs., Inc.*,
    557 U.S. 167 (2009)....................................................................................19

*Henderson v. United States*,
    575 U.S. 622 (2015)....................................................................................23

*In re Under Seal*,
    749 F.3d 276 (4th Cir. 2014)............................................................................4

*Keystone Driller v. General Excavator Co.*,
    290 U.S. 240 (1933)....................................................................................23

*New York v. Ferber*,
    458 U.S. 747 (1982)....................................................................................25

*Richardson v. Clarke*,
    52 F.4th 614 (4th Cir. 2022)............................................................................4

*Riley v. California*,
    573 U.S. 395 (2014)..................................................................................5, 24

*Russello v. United States*,
    464 U.S. 16 (1983).....................................................................................20

*Shular v. United States*,
    206 L. Ed. 2d 81, 140 S. Ct. 779 (2020)..............................................................20

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
    464 U.S. 417 (1984)....................................................................................18

*TRW Inc. v. Andrews*,
    534 U.S. 19 (2001)..........................................................................................14

*United States v. Burgess*,
    684 F.3d 445 (4th Cir. 2012)........................................................................25

*United States v. Fellows*,
    157 F.3d 1197 (9th Cir. 1998)........................................................................3

*United States v. Fifer*,
    863 F.3d 759 (7th Cir. 2017)........................................................................16

*United States v. Ganias*,
    824 F.3d 199 (2d Cir. 2016)......................................................................5, 15

*United States v. George*,
    946 F.3d 643 (4th Cir. 2020)........................................................................20

*United States v. Harper*,
    218 F.3d 1285 (11th Cir. 2000)......................................................................3

*United States v. Hilton*,
    701 F.3d 959 (4th Cir. 2012)........................................................................20

*United States v. Hoffman*,
    No. 2:12-cr-184, 2018 WL 5973376 (E.D. Va. Nov. 14, 2018) .................8, 9

*United States v. Hoffman*,
    764 F. App'x 399 (4th Cir. 2019)...................................................8, 9, 10, 13

*United States v. Hull*,
    606 F.3d 524 (8th Cir. 2010)....................................................................10, 11

*United States v. Jalaram, Inc.*,
    599 F.3d 347 (4th Cir. 2010)......................................................................3, 24

*United States v. Metter*,
    860 F. Supp. 2d 205 (E.D.N.Y. 2012)............................................................15

*United States v. Michalec,*
  176 F.3d 476 (4th Cir. April 6, 1999) ...............................................3

*United States v. Mora,*
  353 F. App'x 792 (4th Cir. 2009)..........................................21, 22

*United States v. Morehouse,*
  34 F.4th 381 (4th Cir. 2022)...............................................2

*United States v. Noyes,*
  557 F. App'x. 125 (3d Cir. 2014)..................................9, 10, 12, 13

*United States v. Olano,*
  507 U.S. 725 (1993)........................................................4

*United States v. R.L.C.,*
  503 U.S. 291 (1992)......................................................20

*United States v. Roca,*
  676 F. App'x 194 (4th Cir. 2017)......................................21

*United States v. Santoro,*
  866 F.2d 1538 (4th Cir. 1989).........................................11

*United States v. Schesso,*
  730 F.3d 1040 (9th Cir. 2013)........................................16

*United States v. Thompson,*
  281 F.3d 1088 (10th Cir. 2002).......................................3

*United States v. Wernick,*
  673 F. App'x 21 (2d Cir. 2016).................................11, 12, 13

*United States v. Williams,*
  592 F.3d 511 (4th Cir. 2010)......................................17, 22

*United States v. Zaleski,*
  686 F.3d 90 (2d Cir. 2012)...........................................21

## CONSTITUTIONAL PROVISIONS

U.S. Const. amend. IV ..................................................................5, 14, 16

U.S. Const. amend. VIII..............................................................23, 24

## STATUTES

18 U.S.C. § 794.................................................................................8

18 U.S.C. § 2252A(a)(5).............................................................19, 20

18 U.S.C. § 2253..........................................................................*passim*

18 U.S.C. § 2253(a) .......................................................................3, 12

18 U.S.C. § 2253(a)(1)..............................................................18, 19, 20

18 U.S.C. § 2253(a)(3)..............................................................7, 8, 13

18 U.S.C. § 2256............................................................................19

18 U.S.C. § 2256(5) .......................................................................19

21 U.S.C. § 853(a) .........................................................................11

21 U.S.C. § 853(b) ..........................................................................7

21 U.S.C. § 853(b)(2).......................................................................7

21 U.S.C. § 881(a)(7)......................................................................11

## RULES

Fed. R. Crim. P. 41 .............................................................2, 8, 10, 21

Fed. R. Crim. P. 41(a)(2)(A) ...........................................................14

Fed. R. Crim. P. 41(e).....................................................................22

Fed. R. Crim. P. 41(e)(2)(B) ...............................................................14, 16

Fed. R. Crim. P. 41(g) .......................................................................*passim*

**GUIDELINE**

U.S.S.G. § 2G2.4(b)(2) ...........................................................................3

# INTRODUCTION

The government has misrepresented facts in its Statement of the Case which are not germane to the Court's resolution of this appeal but should nevertheless be corrected for purposes of the record.[1]

Mr. Sanders ("Sanders") limited his argument before the district court to electronic data stored on three of the nine seized devices but did not explicitly waive his legal claim that non-contraband personal and business digital data on all nine devices should be returned.  JA70.  See JA187 (Counsel "essentially agreeing" that what the court was "focused on sharply today" is whether for the three devices there appears to be non-contraband material on there that should be returned).  Sanders requested the return of non-contraband data on the three devices but did not explicitly withdraw his objection to the entry of the government's proposed forfeiture order covering the nine devices.  Compare

---

[1] The FBI received information that a specific IP address was used to access the home page of a website that contained child sexual abuse and exploitation material, not that the IP address was used to access sexual abuse and exploitation material. Forensic examination of the seized devices revealed only that Sanders's iPhone and iPad were used to communicate with teenagers to receive child pornography. Sanders did not use on-line forums to communicate with minors.

In addition, Sanders also refuted Special Agent Andrew Kochy's declaration regarding the "substantial burden" that would be placed on the government if the government was required to separate the non-contraband files from the contraband files contained on the nine electronic devices.  Only eight were admitted at trial. The ninth was described in Special Agent Emily Eckert's declaration as containing "suspected" child pornography.

*United States v. Morehouse*, 34 F.4th 381, 395 (4th Cir. 2022) (party who identifies an issue and then explicitly withdraws it has waived the issue).

To the extent that the issue of waiver bears on the district court's equitable authority, the court's exercise of discretion was flawed by erroneous factual and legal premises. The burden was always on the government to review the seized material on each of the nine devices *within a reasonable period after the seizure* and *return* the legally possessed data that was beyond the scope of the warrant.[2] Fed. R. Crim. P. 41. The government's factual averments regarding the severity of the burden on its agents were also discredited by Special Agent Christopher Ford's" testimony that he made forensic copies of several and examined the contents of *all* the relevant electronic devices found at Sanders's residence. JA82.

No court has thoroughly examined whether § 2253 mandates the forfeiture of non-contraband data stored within an electronic storage device that is itself subject to forfeiture. The few courts that have addressed the issue either involved consent orders of forfeiture where the property had already been forfeited; addressed the forfeiture provisions of different statutes; or summarily held that there was nothing in the forfeiture statute which indicates that only a "portion" of the property containing child pornography should be subject to forfeiture. No case cited by the government undertook the exhaustive analysis before this Court.

---

[2] The search warrant was executed on February 12, 2020.

Outside the context of § 2253, every court to examine whether data contained within a storage device is "separate property" has held that electronic data is distinct from the device in which it is stored.

Electronic storage devices are also not "other matter" within the meaning of § 2253(a). In prior cases, the government argued that the terms "other items" or "other matters" referred to the computer *files* that contained child pornography, not the computers. Courts in all but one case agreed with the government that the terms referred to the data stored within the computer, not the computer itself.[3]

Lastly, Sanders established in his opening brief that forfeiture of his non-contraband data on forfeitable electronic devices is excessive under settled law and that the relevant *Jalaram* factors weigh in his favor.

---

[3] See e.g., *United States v. Fellows*, 157 F.3d 1197, 1201 (9th Cir. 1998) (finding that the files were the "items" within the meaning of U.S.S.G. § 2G2.4(b)(2), not the hard drive); *United States v. Michalec*, 176 F.3d 476 (Table Decision) at *2 (4th Cir. April 6, 1999) (citing favorably *Fellows* and other cases finding that "a computer file containing visual depictions of child pornography rather than the hard drive, is an 'item' within the meaning of U.S.S.G. § 2G2.4(b)(2)"); *United States v. Thompson*, 281 F.3d 1088, 1092 (10th Cir. 2002) (agreeing with *Fellows* and other circuits that files, not hard drives, are "other items" in the guideline, and noting that Amendment 592 to the guideline confirms this reading, insofar as it added "clarifying" commentary that a computer file qualifies as one item); *United States v. Harper*, 218 F.3d 1285, 1287 (11th Cir. 2000) (citing *Fellows* and others in course of agreeing with the government and district court that the key is that "each file on a disk is separately acquirable, accessible, and distributable; hence each file, and not the entire disk, equates with a book or magazine as in section 2G2.4(b)(2)").

# ARGUMENT

## I. Data files are "separate property" from the devices in which they are stored.

The government's arguments regarding the technical realities of data storage are misplaced and were waived.

### A. The government failed to present evidence regarding the computer processes used to store and read computer data; therefore, the arguments are waived.

There is no such thing as "a matter of practical fact" when it comes to whether the data stored within an electronic storage device is divisible from the device itself. Gov. Br. 18. First and foremost, the issue regarding the technical aspects of storage media was not raised before the district court and no evidence about how electronic data is stored was presented by either party. Parties may not raise new arguments on appeal that were not first presented to the district court absent exceptional circumstances. See, e.g., *Richardson v. Clarke*, 52 F.4th 614, 625 (4th Cir. 2022); *In re Under Seal*, 749 F.3d 276, 285 (4th Cir. 2014) ("[a]bsent exceptional circumstances, ... we do not consider issues raised for the first time on appeal."). Since the government has not permitted the development of the necessary evidence below or met the minimum standard for discretionary review of a waived or forfeited argument, it is reviewable, if at all, for plain error. See *United States v. Olano*, 507 U.S. 725, 732 (1993).

It also bears mentioning, iPhones, iPads, and many newer computers do not have hard drives that are "magnetized." See e.g., Gov. Br. 18-22.  As a result, the government's entire description of how computers record and read data from their storage is meaningless as it relates to at least the iPhones and iPads covered by the district court's order.  Sanders was precluded from refuting the government's claims by the government's failure to raise the issue before the district court.

**B. The so-called "technical realities" of data storage do not change the fact that data files are "separate property" distinct from the digital medium in which they are stored.**

The authorities cited by the government all involve theoretical discussions of the application of computer forensics to search and seizure law.  Ironically, the government took aim at Sanders for incorporating Fourth Amendment case law into the forfeiture context. Gov. Br. 8, 30-34.  The government nevertheless urges the Court to accept what the law review authors themselves described as public policy arguments regarding the physical attributes of computers as they apply to the Fourth Amendment.  The government also cites *United States v. Ganias*, 824 F.3d 199, 216-17 (2d Cir. 2016), which not coincidentally took specific note of the privacy concerns implicated when a hard drive or its forensic mirror is retained:

> [Q]uantitative measures fail to capture the significance of the data kept by many individuals on their computers. Tax records, diaries, personal photographs, electronic books, electronic media, medical data, records of internet searches, banking and shopping information—all may be kept in the same device, interspersed among the evidentiary material that justifies the seizure or search. Cf. *Riley v.*

*California*, ⎯⎯ U.S. ⎯⎯, 134 S.Ct. 2473, 2489–90, 189 L.Ed.2d 430 (2014) (explaining that even microcomputers, such as cellphones, have "immense storage capacity" that may contain "every piece of mail [people] have received for the past several months, every picture they have taken, or every book or article they have read," which can allow the "sum of an individual's private life [to] be reconstructed");

824 F.3d at 218

Notably, this Court previously concluded that data itself must be considered apart from the medium. In *America Online, Inc. v. St. Paul Mercury Ins. Co.*, 347 F.3d 89, 95-96 (4th Cir. 2003), the Court distinguished computer hardware that could no longer properly record data or information from the data itself, at least implying that the file cabinet remains an apt analogy for how the fragmented data files are maintained on a storage device:

> if the arrangement of the data and information stored on the hard drive [of a storage device] were to become disordered or the instructions were to come into conflict with each another, the physical capabilities and properties of the hard drive would not be affected. *Such disordering or conflicting instructions would amount to damage to the data and information and to the instructions (i.e., the software) but not to the hard drive.* The magnetic material on the hard drive could be reoriented and reordered with reinstallation of the instructions. *So it is that we make the distinction between hardware and software.* (emphasis added).

*Id*. at 95.

The distinction between data "i.e., the abstract ideas, logic, instructions, and information." and the computer within which the data is stored was given further meaning by the Court:

while [the insurance policy] covers any damage that may have been caused to circuits, switches, drives, and any other physical components of the computer, *it does not cover . . . the loss of data stored magnetically. These instructions, data, and information are abstract and intangible, and damage to them is not physical damage to tangible property*. (emphasis added).

*Id*.

*America Online* simply does not support the government's premise that the electronic data stored in a forfeited device is inextricable from the device and cannot be returned without returning the device itself.  The argument is also disingenuous because the government possesses forensic copies of the devices which it created for use at trial.  Sanders was previously provided with access to forensic copies of the hard drives from which his forensic expert extracted exculpatory evidence without returning or altering the original device.

In addition, there is no legal basis for the government's claim that § 853(b)'s incorporation of the term "intangible personal property" into § 2253(a)(3)'s definition of "property" is a red herring.  Section 853(b)(2) defines the meaning of property subject to forfeiture to separately include both tangible and intangible personal property.  Accordingly, intangible personal property – "abstract ideas, logic, instructions, and information" – is not only property, but is *distinct* property from computer hardware under the plain meaning of the statute. The government is simply wrong when it asserts that if the electronic device is forfeited, the data inside it necessarily comes with it.  Gov. Br. 23

7

Finally, the government's assertion that § 2253(a)(3)'s broad language also covers the forfeiture of *facilitation* property has nothing to do with the technical realities defining the nature of property or with whether Sanders's data files are separate property under the statute.  Gov. Br. 23-24.  A file-by-file parsing in cases where the defendant seeks the return of property not subject to forfeiture is in fact required by Rule 41 and is consistent with case law, the technical realities defining the nature of property, and the plain meaning of § 2253(a)(3).

### C. Electronic files are separate property that is distinct from the device on which it is stored.

None of the cases cited by the government thoroughly examined whether § 2253 mandates the forfeiture of non-contraband data stored within a device that is subject to forfeiture and no case undertook an exhaustive analysis of whether electronic files were "separate property" including this Court's unpublished opinion in *United States v. Hoffman*, 764 F. App'x 399 (4th Cir. 2019).  Instead, the cases relied on by the government either involved consent orders of forfeiture where the property had already been forfeited; relied on the forfeiture provisions of different statutes; or summarily held that there was nothing in the forfeiture statute to indicate that only a portion of the property should be subject to forfeiture.

In *United States v. Hoffman*, the district court entered a consent forfeiture order listing numerous electronic items to be forfeited pursuant to 18 U.S.C. § 794 – a different statute providing for forfeiture of defense information that aids

8

a foreign government which the government argued elsewhere would make it inapposite. No. 2:12-cr-184, 2018 WL 5973376 (E.D. Va. Nov. 14, 2018) *1. Hoffman then moved for the return of "[c]opies of all electronic media (i.e., family and professional photos, videos and documents) in their original file format, from the devices forfeited pursuant to [the Consent Order of Forfeiture]" claiming that "the forfeiture order and the search warrants [were] devoid of language requiring the forfeiture or seizure of non-responsive items …" *Id*. at *1, 3.

In response, the government, citing *United States v. Noyes*, 557 F. App'x. 125, 127 (3d Cir. 2014), argued that "where petitioner 'requested the return of certain files and programs contained on the forfeited computers,' 'the computers, as a whole. including all of their files and programs, were subject to the forfeiture order.'" *Hoffman*, No. 2:12CR184, 2018 WL 5973763, at *3.

The district court agreed with the government and ruled that Hoffman's electronic media was covered by the Consent Order of Forfeiture:

> Similar to the computers at issue in *Noyes*, the Court finds that Petitioner's electronic devices as a whole, including all of their files and programs, were subject to the Consent Order. The language of the Consent Order clearly states that "[t]he United States shall seize all forfeited property and shall take full and exclusive custody and control of same" and "shall have clear title to the property." ECF No. 128 at ¶¶ 2, 4. Further, much like the forfeiture statute at issue in *Noyes*, there is no language in 18 U.S.C. § 794(d) (the applicable forfeiture statute) indicating that only a portion of the forfeited property can be forfeited. 557 F. App'x. at 127.

*Id*. The district court's cursory opinion was affirmed in a one line unpublished *per curiam* opinion in *United States v. Hoffman*, 764 F. App'x 399 (4th Cir. 2019).

As in *Hoffman*, the defendant in *Noyes* filed a Rule 41(g) motion to stay disposition of two forfeited computers after a final order of forfeiture had been entered. Noyes requested the return of "all non-contraband data electronic files, and programs, contained on either of the forfeited computers" and preserve a "mirror copy" of all storage devices until the expiration of any appeals. The government argued that Noyes' appeal should be dismissed as untimely because his motion was not proper pursuant to Rule 41(g), and was rather a direct challenge to the final order of forfeiture. *United States v. Noyes*, 557 F. App'x. 125, 126 (3d Cir. 2014). The district court denied Noyes' motion without explanation. and an appeal followed. The Third Circuit agreed that Noyes' appeal was an attempt to directly challenge the district court's forfeiture order and should be dismissed for lack of jurisdiction. *Id*. To the extent that Noyes' motion was reviewable under Rule 41, the court held the motion was properly denied. *Id*. Critically, unlike *Hoffman* and *Noyes*, Sanders filed his Rule 41 motion *before* the government requested a preliminary order of forfeiture and objected to its entry.

*Noyes* and *Hoffman* both held that there was nothing in the § 2253 which indicated that only a portion of the property can be forfeited. Both cases based their cursory rulings on the same sentence in *United States v. Hull*, 606 F.3d 524

(8th Cir. 2010), a facilitation property case upholding the forfeiture of a single tract

of real property under 21 U.S.C. § 853(a), where the court held that:

> [o]nce it is established that the "property" subject to forfeiture consists
> of the entire acreage, nothing in the statute allows the court to order
> forfeiture of less than this "property."

*Id*. at 528.[4]  The files on Sanders's devices were all purchased or created

separately, at different times after the devices were acquired, just as anyone

purchasing a storage hard drive would not expect to also receive it loaded with family

photos, music mp3 files, coding files, or cryptocurrency. By analogy, Sanders's

files were acquired under separate "deeds" and would therefore be considered

"separate property."

The discrict court's opinion in *United States v. Wernick*, 673 F. App'x 21

(2d Cir. 2016), relied on the same flawed analysis of the statute.  The defendant in

*Wernick* filed a motion under Fed. R. Crim. P. 41(g) for the return of all data on his

---

[4] This Court's opinion in *United States v. Santoro*, 866 F.2d 1538 (4th Cir. 1989) is
also inapposite.  In *Santoro*, appellants argued that only the smaller portion of the
property where all of the cocaine sales occurred could be forfeited. The property
was bisected by a road and had been taxed as two separate parcels, but the
property's deed described it as a single, undivided tract of land. *Id*. at 1543. The
Court held that the statute at issue plainly states that, "[a]ll real property, including
any right, title, and interest in the whole of any lot or tract of land and any
appurtenances or improvements" is forfeitable. 21 U.S.C. § 881(a)(7) (emphasis
added). The property, although divided by a road, is legally described as a single,
undivided tract. The Court further held that the claimants' subjective
characterization of the property as two tracts could not serve as the legal basis for
determining the number of tracts present for purposes of 21 U.S.C. § 881(a)(7). *Id*.

electronic storage devices not containing child pornography.  Wernick argued that

the government's retention of non-contraband data on the forfeited devices, as

distinguished from the physical devices themselves, was not required either by the

terms of the agreed upon forfeiture order, or by the child-pornography forfeiture

statute.  *Id*. at 25.

Having discovered no case law at odds with *Noyes*, the district court rejected

Wernick's argument that his non-contraband files on previously forfeited devices

were not covered by § 2253(a), finding instead that the non-contraband data was

intertwined with its contraband counterparts and that Wernick's effort to limit the

scope of the forfeiture order to contraband was "contrary to the terms of Section

2253(a) and the persuasive rationale set forth in *Noyes*."  148 F. Supp. 3d 271, 276

(E.D.N.Y. 2015).  Unlike *Wernick*, Sanders objected to the entry of the preliminary

order of forfeiture after first seeking the return of seized property under Rule 41(g).

The Second Circuit held the district court did not err in denying Wernick's

Rule 41(g) motion, but more importantly, the court also found that "Wernick did

not seek return of specific files of a clearly non-criminal nature and of high

personal value that could readily be disentangled from the devices used to further

his criminal activities."  *Id*. at 25–26.  The court found instead that Wernick sought

the return of "all non-pictorial files on the hard drive, as well as metadata relating

to all files (apparently including metadata for the contraband images themselves)."

12

*Id*. Thus, unlike here, where Sanders proposed a protocol for copying and

extracting a defined set of digital files, the Second Circuit in *Wernick* found that:

> It is impossible confidently to conclude that none of the data
> requested was used to facilitate the offenses of conviction (such as
> contact information for parties to the crimes or records of internet
> chats concerning the criminal activity). Moreover, record evidence
> suggests that "thousands and thousands of hours" would be required
> to segregate the computer data as Wernick requests. (internal citation
> omitted).  Under these circumstances, the district court did not abuse
> its discretion in denying Wernick's motion.

*Id*. That was clearly not the case here.

Significantly, the Second Circuit also made it clear that it "need not here

decide whether under § 2253(a)(3), defendants in some cases may retain interests

in data unconnected to criminal activity that is stored on a hard drive that is itself

forfeitable because it was "used ... to commit or to promote the commission of [a

child pornography] offense." *Id*.  Sanders's case is precisely that case.

While *Hoffman*, *Noyes*, and *Wernick* are limited authority for interpreting

the scope of § 2253(a)(3), they have remarkably little to say about whether

electronic data is separate property from the devices in which the data is physically

stored and should not serve as the legal basis for determining whether Sanders's

non-contraband files are separate property that can be segregated, copied and

returned.  Secondarily, all three cases interpret other forfeiture statutes highlighting

the disingenuous nature of the government's criticism of Sanders for citing case

law that also interprets other forfeiture provisions and cases that rely on Fourth

Amendment concepts.

**II.   Fourth Amendment cases involving the seizure and return of electronic media turn on principles present in the forfeiture statute that treat electronic files as separate property from the storage devices themselves.  These cases were also cited by the government.**

Fed. R. Crim. P. 41(a)(2)(A) defines "Property" as including "documents,

books, papers, any other tangible objects *and* information." (emphasis added).

Placement of the word "information" after "other tangible objects" signals the

writers' intent to treat the two separately and is consistent with the cardinal

principle of statutory construction that no word ought to be superfluous, void, or

insignificant.  *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001).  It is also consistent

with the import of the Rule and the advisory committee notes on the 2009

amendments – i.e., that storage media and electronically stored information are

separate forms of property:

> Where the "person aggrieved" requires access to the *storage media **or** the electronically stored information* earlier than anticipated by law enforcement or ordered by the court, the court on a case by case basis can fashion an appropriate remedy, taking into account the time needed to image and search the data and any prejudice to the aggrieved party. (emphasis added).

Fed. R. Crim. P. 41(e)(2)(B), advisory committee note to 2009 amendments.

The advisory committee notes further explain the need for a two-step

process allowing officers to seize or copy an entire storage medium and review it

later "to determine what electronically stored information falls within the scope of the warrant," thus, drawing a clear distinction between the "electronically stored information" and the storage medium in which the information is stored. *Id*. Thus, a warrant may authorize a later review of either the storage medium or the electronically stored information to determine whether the data falls within the scope of the warrant, but may not retain the data with no plans to begin its review. See *United States v. Metter*, 860 F. Supp. 2d 205 (E.D.N.Y. 2012). As the court in *Metter* made clear:

> The parties have not provided the Court with any authority, nor has the Court found any, indicating that the government may seize and image electronic data and then retain that data with no plans whatsoever to begin review of that data to determine whether any irrelevant, personal information was improperly seized. The government's blatant disregard for its responsibility in this case is unacceptable and unreasonable.

*Id*. at 215; see also *United States v. Ganias*, 824 F.3d 199, 216–17 (2d Cir. 2016) ("Nor do we gainsay the privacy concerns implicated when the government retains a hard drive or forensic mirror containing personal information irrelevant to the ongoing investigation, even if such information is never viewed . . . The seizure of a computer hard drive, and its subsequent retention by the government, can give the government possession of a vast trove of personal information about the person to whom the drive belongs, much of which may be entirely irrelevant to the criminal investigation that led to the seizure.").

In the instant case, once the FBI completed its review of Sanders's devices, the district court was required to order the return of legally possessed information that was beyond the scope of the warrant. Since none of the requested personal and business information had been identified by the government as contraband or an instrumentality of a crime, the non-contraband data should have already been returned. Information that can be ordered returned is necessarily divisible from the device in which it is stored. Consequently, the district court erred in holding that the non-forfeitable files stored within contraband electronic devices must be forfeited along with the physical devices and that the burden on the government of returning Sanders's property was substantial.

The government's attempts to distinguish cases applying a Fourth Amendment particularity or reasonable execution standard also fails. Gov. Br. 31-33. Both *United States v. Fifer*, 863 F.3d 759 (7th Cir. 2017) and *United States v. Schesso*, 730 F.3d 1040 (9th Cir. 2013), construed warrants issued under Rule 41(e)(2)(B) that authorized the seizure of electronic storage media as implicitly authorizing law enforcement officers to briefly open and search each file to determine what files were covered by the warrant – nothing more. *Fifer*, 863 F.3d at 766; *Schesso*, 730 F.3d at 1049. The point of these cases was not that they treat the device and the data as one unitary thing as the government contends, but whether the search of "separate property" (i.e., individual files) stored within the

devices was implicitly authorized by the warrant. It is precisely for this reason that

this Court in *United States v. Williams*, 592 F.3d 511 (4th Cir. 2010) held that:

> When a search requires review of a large collection of items, such as
> papers, "it is certain that some innocuous documents will be
> examined, at least cursorily, in order to determine whether they are, in
> fact, among those papers authorized to be seized." *Andresen*, 427 U.S.
> at 482 n. 11, 96 S.Ct. 2737; see also *United States v. Crouch*, 648 F.2d
> 932, 933–34 (4th Cir. 1981) (holding that officers may conduct "some
> cursory reading" of documents discovered during the course of a
> search to determine their relevance to the crime providing the basis
> for the search). *If, in those circumstances, documents not covered by
> the warrant are improperly seized, the government should promptly
> return the documents* or the trial judge should suppress them.
> (emphasis added).

*Id.* at 519–20. *Williams* foresaw the day when large quantities of data would be

stored within electronic storage devices and that a cursory reading of the "items"

would be necessary to determine whether they fell outside the scope of the warrant

and should promptly be returned – precisely what Sanders argued. The Court

should not reward the government's failure to complete its review of the non-

contraband data on Sanders's devices and return the non-contraband data not

covered by the warrant by adopting the district court's flawed assessment of a

perceived burden on government resources.

    *Williams* also settled the relevancy of the file cabinet analogy stating that

"the sheer amount of information contained on a computer does not distinguish the

authorized search of the computer from an analogous search of a file cabinet

containing a large number of documents." *Id*. at 523. Thus, the Court in *Williams*

held that "neither the quantity of information, nor the form in which it is stored, is legally relevant." *Id*. at 524. The district court's reliance on claims that compliance with Sanders's request would impose an unwarranted and substantial burden on government resources was therefore, an abuse of discretion.

## III. Electronic storage devices are not considered "other matter" under § 2253(a)(1).

The district court's broad construction of the term "other matter" in § 2253(a)(1) ignores the specific context in which that language is used and the broader context of the statute as a whole. For the reasons stated in the opening brief, the government's defense of the district court's cursory analysis is misplaced. The portable drives referenced by the government can be taped over with new content without destroying their original form. Books, magazines periodicals, films, and videotaped materials are permanently altered by adding or removing content. Tearing out the page of a book or magazine or altering the contents of a film forever destroys its original form. Similarly, the legislative history accompanying the enactment of § 2253(a)(1) and the Court's opinion in *Sony Corp. of Am. v. Universal City Studios, Inc*., 464 U.S. 417, 422 (1984) add nothing to Congress' intended meaning of "other matter."

**A. The definition of "visual depiction" in 18 U.S.C. § 2256 as including "data stored on a computer disk" refers to the data itself, not the computer.**

The amended statute makes clear that the government's reading of "visual depiction" is flawed. 18 U.S.C.A. § 2256(5) provides:

> "visual depiction" includes undeveloped film and videotape, *data* stored on computer disk or by electronic means which is capable of conversion into a visual image, and *data* which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format. (emphasis added).

"Visual depiction" is unambiguously defined as including *data* stored on a computer and *data* which is capable of conversion into a visual image, not the computer itself. Reading "visual depiction" in § 2253(a)(1) with this definition in mind undercuts the fundamental premise of the district court's ruling. The "matter" that contains data described in the covered offense is the computer file, not the computer disk itself.

Moreover, when Congress amended § 2252A(a)(5) adding the term "computer disk" at the end of the list of materials that contain child pornography, it did not add "computer disk" to the identical list of items appearing before the words "other matter" in § 2253(a)(1). When Congress amends one statutory provision but not another, it is presumed to have acted intentionally – particularly where the nomenclature is otherwise identical. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 174–75 (2009). This makes clear that Congress did not intend a

19

computer to be the type of "matter" that is forfeitable under § 2253(a)(1) of the statute. The Court cannot not ignore Congress' decision to add "computer disk" to § 2252A(a)(5), but not to make a similar addition to § 2253(a)(1). To do so would require "mak[ing] no more than a guess at what Congress intended," which even under *Russello v. United States*, 464 U.S. 16, 29 (1983), is sufficient to warrant application of the rule of lenity. See *Shular v. United States*, 206 L. Ed. 2d 81, 140 S. Ct. 779, 788 (2020) (Kavanaugh, J. concurring).

Beyond the general tools of statutory interpretation, "special considerations govern[ ] the interpretation of criminal statutes." *United States v. George*, 946 F.3d 643, 645 (4th Cir. 2020) (quoting *United States v. Hilton*, 701 F.3d 959, 966 (4th Cir. 2012)). Criminal statutes are "strictly construed and should not be interpreted to extend criminal liability beyond that which Congress has plainly and unmistakenly proscribed." *Id*. Accordingly, if any ambiguity survives the Court's analysis of 18 U.S.C. § 2253, the Court must choose the construction yielding the least amount of forfeiture, or at least not resulting forfeiture of non-contraband property that was not used in the offense. See *United States v. R.L.C.*, 503 U.S. 291, 293 (1992).

## IV. The equities favor the return of Sanders's property.

Appellate courts review a district court's grant or denial of equitable relief under 41(g) for abuse of discretion but review *de novo* any legal conclusion

underlying such a decision. *United States v. Zaleski*, 686 F.3d 90, 92 (2d Cir. 2012).

It is settled law that at the conclusion of criminal proceedings "the person from whom the property was seized is presumed to have a right to its return." *United States v. Roca*, 676 F. App'x 194, 194 (4th Cir. 2017); *United States v. Zaleski*, 686 F.3d at 92.[5]  The government has failed to establish that it was justified in refusing to provide Sanders with copies of the non-contraband files. See *United States v. Mora*, 353 F. App'x. 792, 794 (4th Cir. 2009) (government was required to establish it was still justified in retaining defendant's property). While the original devices may be needed in the event Sanders's convictions are reversed, Sanders requested non-contraband files which could be copied from existing forensic mirror images of the devices that were created by the FBI for purposes of trial.  The Court need not order the return of the original non-contraband files while Sanders's direct appeal in No. 22-4242 is pending.

The district court cited the "unwarranted and substantial burden on government resources" as an alternative basis for denying Sanders's Rule 41(g) motion.  As stated above, the district court plainly misapprehended the

---

[5] Cases cited by the government holding that a defendant cannot use a Rule 41 motion to challenge forfeiture of property where there is an adequate remedy at law are a red herring. Gov. Br 42, n.8.  Sanders properly filed a Rule 41 motion *and* an objection to the entry of a preliminary order of forfeiture.

government's duty under the two-step review and return process envisioned by Rule 41(e) and by this Court's opinion in *United States v. Williams*, 592 F.3d 511 (4th Cir. 2010).

The government also overstated the actual burden on the FBI by grossly exaggerating the amount of data on the devices that it would need to examine, by inaccurately describing the amount of data it had already examined, and by falsely stating that the artificial intelligence technology it used to examine Sanders's devices would not alleviate the manual review required to identify all contraband within the digital media. The district court accepted the government's inaccurate representations even though the government did not dispute Sanders's challenges to the accuracy of Agent Kochy's declaration. In fact, the government has already returned devices seized from Mr. Sanders's residence without manually reviewing every file on the devices using the same AI software that Agent Kochy inaccurately claimed would not alleviate the government's burden.

### A. The district court abused its discretion.

A district court abuses its discretion when it fails or refuses to exercise its discretion or when its exercise of discretion is flawed by an erroneous legal or factual premise. *United States v. Mora*, 353 F. App'x. 792, 793 (4th Cir. 2009). The district court concluded that the equities favored denying Sanders's request. JA231-233. For the reasons stated above, the district court abused its discretion

when ruling that the non-contraband files were forfeitable, and that Sanders's request for return of the non-contraband files would require manual review of every device imposing an unwarranted and substantial burden on government resources.  The district court also abused its discretion when ruling that "any burden to the defendant in this case is the result of [his] own wrongdoing" and that "forfeiture of the devices in their entirety also serves a significant deterrent purpose."  JA233-233 & n.6.

Unclean hands proscribes relief when "an individual's misconduct has 'immediate and necessary relation to the equity that he seeks.'" *Henderson v. United States*, 575 U.S. 622, 225 n.1 (2015) (quoting *Keystone Driller*, 290 U.S. 240, 245 (1933)).  None of the non-contraband information stored in Sanders's devices was related to the charged crimes and none had an "immediate and necessary relation to the equity that he seeks."  The district court made no such claim and the government did no better.  Absent from the record is any real evidence that the goals of sentencing would be met by forfeiting legally possessed property that was not otherwise lawfully subject to forfeiture.

## V.  Forfeiture of the non-contraband data store in the forfeited devices violates the Eighth Amendment

Not only has Sanders established that there was error, but he has established that the error was plain. Opening Br. 31-36.  Indeed, this Court's analysis of Supreme Court precedent analyzing the Excessive Fines Clause in the context of

criminal forfeiture is clear that the type of property subject to forfeiture (here, the non-contraband data stored in forfeited devices) is irrelevant for purposes of the Excessive Fines Clause.  See *United States v. Jalaram, Inc.*, 599 F.3d 347, 354 (4th Cir. 2010).

The Court should reject the government's attempt to equate the financial penalties courts are authorized to impose with the value of the only record of nearly every aspect of a person's life.  The constitutional protections afforded the contents of cellphones by *Riley* are a clear enough indication of the value the Supreme Court places on lawfully possessed information containing what the Court called the "privacies of a person's life."  *Riley*, 573 U.S. at 395-97.

Sanders has also met his burden of showing that the forfeiture of non-contraband information that has the practical effect of stripping him of his personal history affects substantial rights and is grossly disproportionate under the Eighth Amendment.  The government well knows that Sanders did not use Apple's iCloud service to store backups of his personal information and that he had no access to the forfeited devices from which to adduce supporting evidence regarding the "exact nature or value of the files."  Gov. Br. 50.  The permanent loss of the only record of roughly half of a person's life is proof enough of the value of the files.

While courts have recognized that child pornography offenses can be serious offenses, the harm in cases involving the sizeable number of consenting teens

texting their own photos ("sexting"), is vastly different from *New York v. Ferber*, 458 U.S. 747 (1982) and *United States v. Burgess*, 684 F.3d 445 (4th Cir. 2012). The harm is also vastly different where a large number of the images are sent to the defendant unsolicited, or where the images are never distributed or disseminated by the defendant as occurred here. Indeed, one of the teens had no recollection of Sanders or of ever sending him photographs. All of the teens who communicated with Sanders (several adults by the time of trial) advertised their interest in sexual behaviors online and initiated the first contact. The kind of harm described in cases cited by the government did not occur here.

Lastly, while the forfeited devices are instrumentalities of the offense, the government did not argue, and the district court did not find that the non-contraband information was connected to or used to further criminal activity, or that the non-contraband files bore any relationship to the ill-defined harm caused by the charged offense. Acceptance of the government's arguments would therefore, require the Court to greatly expand the traditional understanding of plain error.

## CONCLUSION

For the foregoing reasons, the Court should vacate the district court's preliminary order of forfeiture and order Sanders's legally possessed, non-contraband files returned. Alternatively, the preliminary order of forfeiture should be vacated and the matter remanded for a new hearing.

Respectfully submitted,

/s/ Nina J. Ginsberg
Nina J. Ginsberg
DiMuroGinsberg
1101 King Street, Suite 610
Alexandria, Virginia 22314
(703) 684-4333

*Counsel for Appellant*

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

[ X ] this brief contains [*6,464*] words.

[    ] this brief uses a monospaced type and contains [*state the number of*] lines of text.

2.      This brief complies with the typeface and type style requirements because:

[ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 365*] in [*14pt Times New Roman*]; *or*

[    ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: <u>April 28, 2023            </u>          <u>/s/ Nina J. Ginsberg            </u>
                                                                        *Counsel for Appellant*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 28th day of April, 2023, I caused this Reply

Brief of Appellant and to be filed electronically with the Clerk of the Court using

the CM/ECF System, which will send notice of such filing to the following

registered CM/ECF users:

Annie Z. Zanobini
OFFICE OF THE U.S. ATTORNEY
2100 Jamison Avenue
Alexandria, Virginia 22314
(703) 299-3700

*Counsel for Appellee*

/s/ Nina J. Ginsberg
*Counsel for Appellant*